JOHN GODDARD, Appellee, v. H. V. WINCHELL, Appellant.

Aerolites: OWNERSHIP: REPLEVIN.  Where an aerolite, weighing sixty-six pounds, buried itself in the ground where it fell to the depth of three feet, held, that it thereupon became the property of the owner of the soil upon which it fell, rather than that of one who discovered it the next day after its fall, and dug it up out of the ground.

*Appeal from Winnebago District Court.*—HON. JOHN C. SHERWIN, Judge.

TUESDAY, OCTOBER 4, 1892.

ACTION in replevin.   The subject of the controversy is an aerolite.   In the district court the cause was tried without the aid of a jury, and the court gave judgment for the plaintiff, from which the defendant appeals.—*Affirmed.*

*Charles B. Elliott* and *C. H. Kelley*, for appellant.[*]

Title to this property could not have been gained by the plaintiff by any of the common law methods of acquiring title to things real by occupancy.   If not, therefore, by occupancy, nor escheat, nor prescription, nor forfeiture, nor by alienation, then not at all; unless, having title to the land upon which this property fell, the aerolite by falling, thereby becomes a part and parcel of the land by accession, similar to trees and fruits that grow upon the land, or to fixtures or buildings that are attached thereto by the action of man intentionally or by mistake. The court below evidently applied that ancient rule of real property, *quidquid*

[*]As the question presented in this case is not only one of much interest, but seems to be an original one, in this country at least, the reporter felt justified in publishing somewhat longer extracts from the arguments of counsel than would ordinarily be deemed proper.—*Reporter.*

*plantatur solo, solo cedit*—whatever is affixed to the soil belongs thereto,—or, as is stated by our modern authors, "A permanent annexation to the soil of a thing, in itself personal, makes it a part of the reality." Tiedeman on Real Property, sec. 2. The question presented by this appeal is, whether this aerolite fairly and properly falls within the reason and the letter of that rule, or whether it more properly and reasonably comes within the control of another rule of equal antiquity, and stated by Blackstone as follows: "Occupancy is the taking possession of those things which before belonged to nobody." And "whatever movables are found upon the surface of the earth, or in the sea, and are unclaimed by any owner, are supposed to be abandoned by the last proprietor, and as such are returned into the common stock and mass of things; and therefore they belong as in a state of nature to the first occupant or finder." 2 Blackstone, 258, 402; *McLaughlin v. Waite*, 5 Wend. 410; *Eads v. Brazelton*, 22 Ark. 501; *State v. Taylor*, 27 N. J. L. 121; *Sideck v. Duran*, 67 Tex. 262; *Armory v. Flynn*, 10 John. 102; *Brown v. Sullivan*, 62 Ind. 281; *Tancil v. Sleaton*, 28 Gratt. 601. Before this aerolite reached the earth it unquestionably belonged to the "common stock and mass of things," and, therefore, was not the property of anyone. It was not realty, in the legal sense of the term, and no more belonged to the owner of the land on which it was destined to fall, than it belonged to the man who was afterwards destined to find it there. Now, was its character changed from that of a chattel to that of realty, and its *status* changed from that of a thing unowned to that of a thing held in fee simple, the instant it struck and buried itself in the surface of the soil? If we examine the reason for the ancient rule, "that whatever is affixed to the soil belongs to the soil," we find it was adopted when real property constituted the whole property of the world; the lord of

the fee claimed everything that by accident, mistake or change happened to become fixed to the soil of his fief. But even in those times and in those cases, where the thing affixed was claimed as a part of the realty, in a great majority of instances, if not all, there was some reason in the nature of the thing or in its adaptability to the use or enjoyment of the land which made it proper to consider it as a part thereof. In the case at bar there is nothing in the nature of the thing itself which remotely resembles soil, or could ever disintegrate and become soil, or could in any manner ever enrich or promote the uses of the land in the slightest degree. 10 Annual Report of Smithsonian Institution, 159. An aerolite is largely metallic iron; as unlike the iron ore found native in the earth as Damascus steel. No length of time or powers of corrosion would ever induce its disintegration. A solid ball of metallic iron it would continue to be for untold ages, as useless for any practical end, as though it had remained in the sky. In modern times many inroads have been made, for one reason and another, upon this ancient rule of real property. Emblements, so far as the tenant is concerned, have been regarded as personalty, and not as realty. *Capen v. Peckham*, 35 Conn. 88; *Seeger v. Pettit*, 77 Pa. St. 437; *Holmes v. Tremper*, 20 Johns. 29; *Price v. Brayton*, 19 Iowa, 309; *Snedeker v. Warring*, 12 N. Y. 170. Things attached to the realty which are not especially adapted to the use of the premises, do not assume the character of realty by annexation. *Murdock v. Gifford*, 18 N. Y. 28; *Cresson v. Stout*, 17 Johns. 116; *Voorhees v. McGinnis*, 28 N. Y. 278. *Gale v. Ward*, 14 Mass. 352; *Union Bank v. Emerson*, 15 Mass. 159; *Pierce v. George*, 108 Mass. 78; *Hill v. Sewald*, 53 Pa. St. 274; *Fullman et al. v. Stearns et al.*, 30 Vt. 443. This principle of adaptability is most clearly recognized by the authorities. It is recognized in *Gall v. Wood*, 14 Mass. 351, where the court says: "It is true

that the relaxation of the ancient doctrine respecting fixtures has been in favor of tenants against landlords.'' The old common law criterion of physical annexation to the soil has been exploded, even in regard to buildings. *VanNess v. Packard*, 2 Wheat. 146; 53 Pa. St. 274. We do not claim that this aerolite is a fixture, but we have noted these relaxations of the old rule that ''whatsoever is affixed to the soil belongs thereto,'' to show that under the influences of advancing civilization, and the necessities of modern life and activity, exceptions have been made, and modifications established, in accordance with reason and natural justice. But in the case at bar there is not the slightest adaptability of this ball of metallic iron to the use, enjoyment or ornamentation of the land on which it chanced to fall. Its use is purely scientific. Its value is found in the story it tells of other worlds, in the information it imparts respecting the composition, the structure, the laws of chemical combinations, and the crystalization in those far off balls of celestial matter. Its adaptability to successful investigation is unquestionable; its adaptability to agriculture or to any other use to which land is ever put is wholly wanting. Thus we submit that this ancient rule, hoary with age, though in many cases as useful to-day as at any time in its history, should not be extended like a cast iron network so as to include things never contemplated in its adoption, and which for numerous and substantial reasons should forever remain outside its rigid bars. The proper principle to apply in the case at bar is that of original acquisition, and in this position we are not entirely without precedent. 20 Albany L. J., 299. Under the Roman law, when treasure was found by one person on the land of another, one-half thereof was given to the finder, and the other half went to the owner of the land. Institutes, Liber II, Title 1, 389, cited in 74 Me. 452; McKenzie's Roman Law, 170. But in

English and American law the finder of property not claimed by an owner is entitled to the whole of it, even though it be found on the land of another.    It is the settled doctrine with us that lost or abandoned property belongs to the finder against all the world except its former owner, because it has by being lost or abandoned returned to the "common stock and mass of unowned things."    This aerolite and a lost jewel rest upon precisely the same principle, the only difference being that the finder of the jewel gains title to it against all the world except the former owner, while the finder of the aerolite gains title to it against all the world, because it never had a former owner, with this single difference, that no one can ever question the finder's right to the aerolite, while the former owner may question his right to a thing lost.    The same principles and rules of law apply to the property in dispute as apply to lost and abandoned property.    They are all in the great "common stock," and belong to the first occupier or fortunate finder.    *Armory v. Delamerie*, 1 Strange, 505; *Bridges v. Hawksworth*, 7 *e. g.* L. and Eq., 424; *Durfee v. Jones*, 11 R. I. 588; *Brown v. Sullivan*, 62 Ind. 281; *Hamaker v. Blanchard*, 90 Pa. St. 377; *Tatum v. Sharpless*, 6. Phil. 18.    The authorities regard such lost articles as things fallen back into the common stock, and purely upon the ground of prior occupancy is the finder's title made to rest.    2 Blackstone's Commentaries, sec. 402, and cases above cited. *Severan v. Yoran*, 16 Or. 269.    Applying this principle to the case at bar, this aerolite, which never had an owner, being a part of the same great mass of unowned things, into which things lost always return, is the property of the fortunate finder by prior occupation; the place where he found it forms no exception to the rule.    If one finds lost money upon my premises, whether in my barn, my place of business, or even in my dwelling, and can hold it against me, as the cases

cited distinctly hold, much more, then, would he hold against me the article he chanced to find in my pasture, upon uncultivated land. Practically the same rule is held regarding things abandoned. They fall back into the "common stock," and are the property of him who first possesses himself of them. *Heslem v. Lockwood*, 37 Conn. 500. As to things which were never owned, which have never yet been out of the "common stock and mass of things," the same rule holds in the main, and the person who first captures the chattel may hold it against the world. The capture of animals, *feræ naturæ*, creatures belonging to the common stock, is thus governed by the rule of prior occupation. *Faber v. Gennie*, 1 Sprague, 315; *Young v. Hickens*, 1 Dav. and Mer. 592; *Armory v. Flynn*, 10 Johns. 102. So with this aerolite, if not realty, it remains a part of the great mass of common things, unowned by anyone, until the finder has discovered and taken it into his possession, whereupon it becomes his property, and the place in which he found it makes no exception to the rule. The public welfare and public policy are always matters of gravest concern, and are especial objects of consideration by courts of justice. The six or eight hundred of these specimens that are annually gathered are esteemed as the most trustworthy witnesses to the nature and constitutional structure of the worlds beyond us. 10 Annual Report, Smithsonian Inst., 157. To decide that things of such peculiar and singularly scientific value belong to the fee is to discourage research, and retard progress in scientific knowledge. We conclude, therefore, that the rule *quidquid plantatur solo, solo cedit* should not be applied in this case, but that the rule of original acquisitions should be.

*Peters & Fisher* and *W. E. Bradford*, for appellee.

This is not the case of a lost article of personalty lying on the soil. Being down in and a part of the

soil it belongs *prima facie* to the fee owner.   If a man can go on my land and dig up an aerolite which fell yesterday, why may he not one that fell last week, last month, last year, or years ago?   This "not always there" and "I found it" theory has other aspects.   If tenable, why may not anyone dig up and remove a boulder of any size that lies buried or half-buried on my land? Geology demonstrates beyond all dispute that the ice of the glacial period tore that boulder from some ledge of rock in Minnesota, bore it in its bosom southward and finally dropped it ages ago on what is now my Iowa farm. Whatever is down into the soil becomes a part thereof. This is true, save in the case of fixtures, where there was an intent to remove, even when put there by human agency.   How much more so when nature plants it there?   An analogous case is the doctrine of accessions alluvion, etc., 2 Blackstone, 262, etc. If a river takes from one and gives to another, it belongs to the latter. Blackstone says if a man loses his ground by a sudden flood, he shall be recompensed by what the river has left in some other place.   But as shown in Shultes on Aquatic Rights, 136, 137, it goes to the owner where it is deposited, unless it be great and sudden, when the former owner may reclaim.   The essence of this exception being that because so great, sudden and recent, the former owner is enabled to identify and reclaim it. This exception proves the rule; for a meteoric accession never had a former owner, and though it drops quickly from the heavens, yet the face of the land remains unchanged.   It is utterly unlike a river cutting across a bend and adding one or a hundred acres to my side of the *filum aquæ;* nor is it like the island thrown up, where no land was before.   The essence of the doctrine is that no former owner can be traced, and being now on and substantially a part of the land that was there before, it belongs to the land owner.   "Land" in a legal sense covers *all* of the surface of the earth.   All

that lies below the surface, and, besides, about everything above the surface which is physically annexed to the soil. They may allow tenants to remove certain things that are on the soil, but things below it, never. No one has a right to go prodding and grubbing things out buried three feet deep in my land on the plea that the things are not adapted to growing crops. If valuable for something else, I am the one to do so if I see fit. Our position is that the stone became a part of the land, like any other rock, stone or thing lying below its surface. We got title to the land by grant and alienation from the United States. When the stone fell it became a part and parcel of that land. According to 2 Blackstone, 258, there can be no title by occupancy to realty. Even under the statute of limitation, there must be the color of title coupled with adverse possession for the period. But of chattels there can be title by occupancy. Appellant's brief quotes from 2 Blackstone, 402. In the first place it treats only of "movables," *i. e.*, chattels, goods, etc., as opposed to realty. That brings us back again to the main question. Was that aerolite down three feet in the earth a chattel or a part of the land? It was a part of the land. Then again it says, found "upon the surface of the earth," clearly intending to exclude anything found in or attached to the land, making this rule consistent with the rules of real property law; also it says unclaimed by owner, whereas in the case of this aerolite or any other stone, the land owner claims it, and all things found in it, and being in possession of the land, he is in possession of all things therein. This rule further says, "supposed to be abandoned by the last proprietor." This don't fit this aerolite at all. The finder's title to a chattel is based on the thought that some person had owned and abandoned it. But no one ever owned an aerolite, before it fell. The "finder" in a legal sense presupposes a "loser" or one who abandoned.

Counsel cite many cases, to show that the place where the thing is found makes no difference. But in all the cases cited, the thing found was not found down in the earth—all of them were chattels. No doubt money found on my land or in my shop, belongs to the finder. But we question some if the chattel was buried in the earth, put there by human hands, *e. g.*, a lot of coins, whether it would belong to the finder if he had to commit waste or trespass to get it. But even then the law supposes abandonment by some former owner. This is not a case of a chattel lying on the land; nor can it be presumed to be abandoned. There is no analogy between an aerolite and a thing lost. Nor can animals, *feræ naturæ*, be said to be like this stone. They roam where they will, and belong to no one until captured. This stone became imbedded in and a part of the appellee's land. Counsel argue (pages 7 to 12 of their brief,) to avoid the plain principle of ancient and modern real-property law that land includes all of the surface, all annexed to it and all below it, and talk about "inroads on the rule;" but the cases cited show simply that tenants are allowed to remove certain things not specially adapted to become a part of the freehold and not intended to be permanent. But no one but a tenant could remove even those things; one essential is that it was placed there by human hands temporarily and with intent to remove. No human hand placed this stone in the ground. By the way, what difference should there be between this aerolite, buried three feet and a piece of limestone or granite at the same depth? Counsel speak of certain movables being a part of the land because useful to it. They keep looking at this stone as flying in the air or being carried around. It was not a chattel, but down in the earth. They say its chief use is a scientific one. The same might be said of mammoth's bones and teeth buried in my land, or of the fossils imbedded in that ledge of rock. But

no one can dig them up, save with the land owner's consent. In this same connection we can concede the great scientific value of these aerolites, their tolerable rarity, and, we may add, great value; but these things give no one an excuse to dig, tear up and burrow around my land. It may be a public benefit, but one's property cannot be taken or used for the public good, save by due process of law and by making due compensation. This aerolite belonged to Goddard, the appellee, because it was buried down three feet in his land, and as a physical fact, was a part and parcel of it. "An aerolite belongs to the owner of the fee of the land upon which it falls. Therefore, a pedestrian upon a highway who first discovers such a stone, cannot claim title to it, the highway being a mere easement for travel." Anderson's Law Dictionary, p. 19 (top 2d col.) at end of article on "accretion," citing *Mass v. Amana Society*, Ill. (1877); 16 Alb. Law Journal, 76; 13 Irish Law Times, 381.

GRANGER, J.—The district court found the following facts, with some others, not important on this hearing: "*First*. That the plaintiff, John Goddard, is, and has been since about 1857, the owner in fee simple of the north half of section number three, in township number ninety-eight, range number twenty-five, in Winnebago county, Iowa, and was such owner at the time of the fall of the meteorite hereinafter referred to. *Second*. That said land was prairie land, and that the grass privilege for the year 1890 was leased to one James Elickson. *Third*. That on the second day of May, 1890, an aerolite passed over northern and northwestern Iowa, and the aerolite, or fragment of the same, in question in this action, weighing, when replevied, and when produced in court on the trial of this cause, about sixty-six pounds, fell onto the plaintiff's land, described above, and buried itself in the ground to a

depth of three feet, and became imbedded therein at a point about twenty rods from the section line on the north. *Fourth.* That the day after the aerolite in question fell it was dug out of the ground with a spade by one Peter Hoagland, in the presence of the tenant, Elickson; that said Hoagland took it to his house, and claimed to own same, for the reason that he had found same and dug it up. *Fifth.* That on May 5, 1890, Hoagland sold the aerolite in suit to the defendant, H. V. Winchell, for one hundred and five dollars, and the same was at once taken possession of by the said defendant, and that the possession was held by him until same was taken under the writ of replevin herein; that the defendant knew at the time of his purchase that it was an aerolite, and that it fell on the prairie south of Hoagland's land.    *    *    *    *Tenth.* I find the value of said aerolite to be one hundred and one dollars ($101) as verbally stipulated in open court by the parties to this action; that the same weighs about sixty-six pounds, is of a black, smoky color on the outside, showing the effects of heat, and of a lighter and darkish gray color on the inside; that it is an aerolite, and fell from the heavens on the second of May, 1890; that a member of Hoagland's family saw the aerolite fall, and directed him to it."

As conclusions of law, the district court found that the aerolite became a part of the soil on which it fell; that the plaintiff was the owner thereof; and that the act of Hoagland in removing it was wrongful. It is insisted by the appellant that the conclusions of law are erroneous; that the enlightened demands of the time in which we live call for, if not a modification, a liberal construction, of the ancient rule, "that whatever is affixed to the soil belongs to the soil," or, the more modern statement of the rule, that "a permanent annexation to the soil, of a thing in itself personal,

makes it a part of the realty." In behalf of the appellant is invoked a rule alike ancient and of undoubted merit—that of "title by occupancy"—and we are cited to the language of Blackstone, as follows: "Occupancy is the taking possession of those things which before belonged to nobody;" and "whatever movables are found upon the surface of the earth, or in the sea, and are unclaimed by any owner, are supposed to be abandoned by the last proprietor, and as such are returned into the common stock and mass of things, and therefore they belong, as in a state of nature, to the first occupant or finder." In determining which of these rules is to govern in this case, it will be well for us to keep in mind the controlling facts giving rise to the different rules, and note wherein, if at all, the facts of this case should distinguish it. The rule sought to be avoided has alone reference to what becomes a part of the soil, and hence belongs to the owner thereof, because attached or added thereto. It has no reference whatever to an independent acquisition of title, that is, to an acquisition of property existing independent of other property. The rule invoked has reference only to property of this independent character, for it speaks of movables "found upon the surface of the earth or in the sea." The term "movables" must not be construed to mean that which can be moved, for, if so, it would include much known to be realty; but it means such things as are not naturally parts of earth or sea, but are on the one or in the other. Animals exist on the earth and in the sea, but they are not, in a proper sense, parts of either. If we look to the natural formation of the earth and sea, it is not difficult to understand what is meant by "movables," within the spirit of the rule cited. To take from the earth what nature has placed there in its formation, whether at the creation or through the natural processes of the acquisition and depletion of its particular parts,

as we witness it in our daily observations, whether it be the soil proper or some natural deposit, as of mineral or vegetable matter, is to take a part of the earth, and not movables.

If, from what we have said, we have in mind the facts giving rise to the rules cited we may well look to the facts of this case to properly distinguish it. The subject of the dispute is an aerolite, of about sixty-six pounds' weight, that "fell from the heavens" on the land of the plaintiff, and was found three feet below the surface. It came to its position in the earth through natural causes. It was one of nature's deposits, with nothing in its material composition to make it foreign or unnatural to the soil. It was not a movable thing "on the earth." It was in the earth, and in a very significant sense immovable; that is, it was only movable as parts of earth are made movable by the hand of man. Except for the peculiar manner in which it came, its relation to the soil would be beyond dispute. It was in its substance, as we understand, a stone. It was not of a character to be thought of as "unclaimed by any owner," and, because unclaimed, "supposed to be abandoned by the last proprietor," as should be the case under the rule invoked by the appellant. In fact, it has none of the characteristics of the property contemplated by such a rule.

We may properly note some of the particular claims of the appellant. His argument deals with the rules of the common law for acquiring real property, as by escheat, occupancy, prescription, forfeiture, and alienation, which it is claimed were all the methods known, barring inheritance. We need not question the correctness of the statement, assuming that it has reference to original acquisition, as distinct from acquisitions to soil already owned, by accretion or natural causes. The general rules of the law, by which the owners of riparian titles are made to lose or gain

by the doctrine of accretions, are quite familiar. These rules are not, however, of exclusive application to such owners. Through the action of the elements, wind and water, the soil of one man is taken and deposited in the field of another; and thus all over the country, we may say, changes are constantly going on. By these natural causes the owners of the soil· are giving and taking as the wisdom of the controlling forces shall determine. By these operations one may ˙ be affected with a substantial gain, and another by a similar loss. These gains are of accretion,. and the deposit becomes the property of the owner of the soil on which it is made.

A scientist of note has said that from six to seven hundred of these stones fall to our earth annually. If they are, as indicated in argument, departures from other planets, and if among the planets of the solar system there is this interchange, bearing evidence of their material composition, upon what principle of reason or authority can we say that a deposit thus made shall not be of that class of property that it would be if originally of this planet and in the same situation? If these exchanges have been going on through the countless ages of our planetary system, who shall attempt to determine what part of the rocks and formations of especial value to the scientist, resting in and upon the earth, are of meteoric acquisition, and a part of that class of property designated in argument as "unowned things," to be the property of the fortunate finder instead of the owner of the soil, if the rule contended for is to obtain? It is not easy to understand why stones or balls of metallic iron, deposited as this was, should be governed by a different rule than obtains from the deposit of boulders, stones, and drift upon our prairies by glacier action; and who would contend that these deposits from floating bodies of ice belong, not to the owner of the·

soil, but to the finder? Their origin or source may be less mysterious, but they, too, are "telltale messengers" from far-off lands, and have value for historic and scientific investigation.

It is said that the aerolite is without adaptation to the soil, and only valuable for scientific purposes. Nothing in the facts of the case will warrant us in saying that it was not as well adapted for use by the owner of the soil as any stone, or, as the appellant is pleased to denominate it, "ball of metallic iron." That it may be of greater value for scientific or other purposes may be admitted, but that fact has little weight in determining who should be its owner. We cannot say that the owner of the soil is not as interested in, and would not as readily contribute to, the great cause of scientific advancement, as the finder, by chance or otherwise, of these silent messengers. This aerolite is of the value of one hundred and one dollars, and this fact, if no other, would remove it from uses where other and much less valuable materials would answer an equally good purpose, and place it in the sphere of its greater usefulness.

The rule is cited, with cases for its support, that the finder of lost articles, even where they are found on the property, in the building, or with the personal effects of third persons, is the owner thereof against all the world, except the true owner. The correctness of the rule may be conceded, but its application to the case at bar is very doubtful. The subject of this controversy was never lost or abandoned. Whence it came is not known, but, under the natural law of its government, it became a part of this earth, and, we think, should be treated as such. It is said by the appellant that this case is unique, that no exact precedent can be found, and that the conclusion must be based largely upon new considerations. No similar question has, to our knowledge, been determined in

a court of last resort.  In 15 American and English
Encyclopedia of Law, page 388, is the following lan-
guage: "An aerolite is the property of the owner of
the fee upon which it falls.  Hence a pedestrian on the
highway, who is first to discover such a stone, is not
the owner of it; the highway being a mere easement
for travel."  It cites the case of *Maas v. Amana
Society*, 16 Alb. Law J. 76, and 13 Irish Law Times,
381, each of which periodicals contains an editorial
notice of such a case having been decided in Illinois,
but no reported case is to be found.  Anderson's Law
Dictionary states the same rule of law, with the same
references, under the subject of "Accretions."  In 20
Alb. Law J. 299, is a letter to the ·editor from a
correspondent, calling attention to a case determined
in France, where an aerolite found by a peasant was
held not to be the property of the "proprietor of the
field," but that of the finder.  These references are
entitled, of course, to slight, if any, consideration,
the information as to them being too meager to indi-
cate the trend of legal thought.

Our conclusions are announced with some doubts
as to their correctness, but they arise not so much from
the application of known rules of law to proper facts
as from the absence of defined rules for these particular
cases.  The interest manifested has induced us to give
the case careful thought.  Our conclusions seem to us
nearest analogous to the generally accepted rules of
law bearing on kindred questions, and to subserve the
ends of substantial justice.  The question we have dis-
cussed is controlling in the case, and we need not
consider others.

The judgment of the district court is AFFIRMED.