GREAT SALT LAKE MINERALS &
CHEMICALS CORPORATION, a
Delaware Corporation, Plaintiff,

v.

STATE TAX COMMISSION of
Utah, Defendant.

No. 14962.

Supreme Court of Utah.

Dec. 22, 1977.

Claron C. Spencer and Richard E. Danley, Jr. of Senior & Senior, Salt Lake City, for plaintiff.

Robert B. Hansen, Atty. Gen., G. Blaine Davis, Asst. Atty. Gen., Salt Lake City, for defendant.

HALL, Justice:

This is a proceeding to review an order of the State Tax Commission of Utah, hereinafter referred to as "Commission," holding that certain dikes, pilings, bridges and weirs constructed by Great Salt Lake Minerals

and Chemicals Corporation, hereinafter referred to as "GSL," on lands of the State of Utah are improvements subject to ad valorem property taxes.

The question as to the applicability of taxes was presented to the Commission on stipulated facts which are abstracted as follows: GSL is the lessee and the State of Utah is the lessor of some 12,000 acres of land adjacent to the Great Salt Lake upon which GSL has constructed a system of solar evaporation ponds for recovery of minerals from the lake. The lands are property of the State of Utah and as such are constitutionally and statutorily exempt from taxation.[1] GSL constructed the solar ponds by forming dikes from earth scooped from the leased lands supplemented by substantial amounts of earth and rock hauled from private off-site locations. In addition to the dikes, the evaporation system includes pumps, pump stations, motors, piping, electrical and mechanical equipment, a pond control center building, wooden pilings, bridges and weirs. GSL only challenges the taxation of the dikes, pilings, bridges and weirs asserting they are state land and thus exempt from taxation.

GSL makes no claim that the dikes, pilings, bridges and weirs are not improvements. Hence the sole issue is whether the improvements are exempt from taxation by reason of the fact they are affixed to realty owned by the State of Utah.

The improvements are an integral part of GSL's business activities and the effective use of the leased lands is wholly dependent upon the improvements placed thereon. GSL is free to construct, utilize, alter, remove, or even destroy them at will. Without the improvements placed thereon, the bare leased lands have absolutely no utility to GSL, and they were constructed for its sole use and benefit as part and parcel of a venture for profit.

Generally, the taxation of improvements on state lands is a matter of statutory interpretation. Consequently, the decisions of the various jurisdictions are not wholly in accord. However, several with similar statutes have reached the same result as the Commission in this case.[2]

The California case of *Outer Harbor Dock and Wharf Co. v. Los Angeles County*[3] involved the question of whether a wharf and two warehouses constructed by the plaintiff on land owned by the State of California and leased to plaintiff were exempt from taxation. It was claimed there that the property was securely affixed to the land and was, therefore, realty and could not be taxed. In holding that the property could be taxed as *improvements*, the California court quoted from a prior case of *San Francisco v. McGinn*[4] as follows:

> . . . Therein a certain school lot in the city of San Francisco, which had been dedicated for school purposes forever (and therefore incapable of private ownership) was, pursuant to a special statute, leased to McGinn for a period of 50 years. The lease contained no provision relating to the construction of improvements by the lessee, or entitling the lessee to remove any improvements. McGinn constructed a four-story frame building, with basement, with a brick foundation, permanently imbedded in and attached to the soil. The improvements were assessed for taxation to McGinn for the year 1881–1882, and the suit was brought to collect said taxes. In McGinn's answer to the complaint he alleged that—
>
> \* \* \* \* \* \*
>
> 'That the improvements mentioned in the complaint are and always have been permanently attached to and are part of said real estate and lot of land described

1. Article XIII, Section 2, Constitution of Utah and U.C.A. 1953, 59–2–1.

2. *Watson Bros. Realty Co. v. Douglas County*, 149 Neb. 799, 32 N.W.2d 763 (1948); *City &*

*County of San Francisco v. San Mateo County*, 17 Cal.2d 814, 112 P.2d 595 (1941).

3. 47 Cal.App. 194, 193 P. 142 (1920).

4. 67 Cal. 110, 7 P. 187 (1885).

in the complaint, and themselves real estate.'

'That the property mentioned in the complaint as having been assessed is not, nor any part thereof, and has never been, personal property.'

\* \* \* \* \* \*

'It is not necessary to follow and answer in detail the various reasons given by defendant why he should not be held liable; it is sufficient to say that, for the purposes of revenue, the Legislature of this state has observed a distinction between real estate and improvements, and that distinction has been recognized by this court. . . . We are of opinion that, for the purpose of revenue, the defendant was the owner of the property assessed, and that he is liable for the taxes.'

After quoting the foregoing from the *McGinn* case, the California Supreme Court said:

Indeed, the rule is thoroughly settled in California that, though the land may be exempt from taxation because it belongs to the city, to the state, or to the United States, yet improvements made thereon by an individual for his own use and benefit are subject to assessment and taxation. . . .

Turning to the applicable statutory and constitutional law of Utah it is noted that "improvements" are defined as real estate [5] and includes all buildings, structures, fixtures, fences and improvements erected upon or affixed to land, whether title has been acquired to the land or not.[6]

Article XIII, Section 2, of the Utah Constitution provides for taxation of all tangible property in the state, not exempt, in the following language:

All tangible property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. The property of the state . . . shall be exempt from taxation. . . .

U.C.A. 1953, 59–2–2, recognizes the exemption of state land from taxation, but provides for the taxation of improvements thereon in the following language:

No tax shall be levied upon lands, the title to which remains in the state, held or occupied by any person under a contract of sale or lease from the state, *but this provision shall not be construed to prevent the taxation of improvements on such lands* . . . . [Emphasis added.]

U.C.A. 1953, 59–13–73, imposes a privilege tax upon possession and use of tax-exempt property in the following language:

. . . there is imposed and there shall be collected a tax upon the possession or other beneficial use enjoyed by any private individual, association, or corporation of any property, real or personal, *which for any reason is exempt from taxation*, when such property is *used in connection with a business conducted for profit*, . . . [Emphasis added.]

 The foregoing statute clearly and unequivocally applies a use tax to all property exempt for any reason, including property theretofore exempt.[7] The obvious legislative intention was to close any gaps in the tax laws by imposing a tax on any property possessed or used in connection with a business for profit which was otherwise exempt from taxation.[8]

 It is most difficult to view the improvements as being owned by the state, and thus exempt from taxation, since the lease provisions not only afford GSL complete freedom to construct, alter or destroy them but also permits their removal within a 12-month period after termination of the lease. Even assuming, however, that ownership is in the state, by the law of fixtures or otherwise, the express language of the

---

5. U.C.A. 1953, 59–3–1(2)(c).

6. U.C.A. 1953, 59–3–1(3).

7. U.C.A. 1953, 59–2–2.

8. *Thiokol Chemical Corp. v. Peterson,* 15 Utah 2d 355, 393 P.2d 391 (1964).

privilege tax statute[9] fills the gap and requires the imposition of taxes.

GSL expended considerable funds on the improvements in question and had they been affixed to private lands there would be no doubt about their taxability and no contention is made to the contrary.

Exemptions from taxation are to be strictly construed and all ambiguities are to be resolved in favor of taxation.[10] Applying this basic rule, a reasonable interpretation of the constitution and statutes will recognize the legislative intent to exempt all state property from taxation, an obviously worthwhile goal, and, on the other hand, to tax all improvements made thereon. A contrary conclusion strains the express language contained therein and thwarts the imposition of taxes. It would foster unfairness since improvements placed on state-owned lands would be exempt while improvements placed on private lands would be taxed. The concept of equal proportionment of taxes is well recognized.[11]

The Commission properly interpreted the constitution and statutes and its decision is affirmed. No costs awarded.

CROCKETT, MAUGHAN and WILKINS, JJ., concur.

ELLETT, Chief Justice (concurring and dissenting):

I concur in the main opinion except as to the holding that the dikes may be taxed. Those dikes are soil and land as much now as they were when their components were in a flat plane.

U.C.A. 1953, 59–2–2, provides in substance that no tax shall be levied upon lands, the title to which remains in the state, held or occupied by any person under a lease from the state. However, it further provides that improvements on such lands may be taxed. We then have the problem of deciding whether or not the items in dispute are land or improvements to land.

In the case of *Backus v. Hooten*[1] the question of what was an improvement upon land was decided. There, the owner of land employed a contractor to level his land so as to permit irrigation water to flow across it. The contractor was paid a sum in excess of $500 for his work; however, he failed to pay some materialmen and they sued the owner of the land under a statute[2] which made the owner of the land personally liable for "(t)he construction, addition to, or alteration or repair of, any building, structure or *improvement upon land . . .*" unless a bond was required from the contractor. The owner had not required a bond and the issue was whether the leveling of the land was an improvement thereto. This Court held that the leveling of the land enhanced its value but did not constitute an improvement upon the land.

It would seem that the *unleveling* of land by making dikes would be no more of an improvement upon the land than was the leveling thereof in the *Backus* case. The mere moving of earth from one place to another does not change the land into an *improvement* on the land even though it makes the land more valuable. The dikes are not improvements; they are a part of the realty and cannot be taxed as improvements upon realty.

California has held that levies or embankments of a canal were not improvements taxable as improvements separate and apart from a canal which was taxable.[3] That court also held that the fill of earth and sand made between a breakwater and

---

9. U.C.A. 1953, 59–13–73.

10. *State v. Salt Lake County*, 96 Utah 464, 85 P.2d 851 (1938), citing *State ex rel. Richards v. Armstrong*, 17 Utah 166, 53 P. 981 (1898) and *Judge v. Spencer*, 15 Utah 242, 48 P. 1097 (1897).

11. *Salt Lake County v. Tax Commission*, Utah, 548 P.2d 630 (1976).

1. 4 Utah 2d 364, 294 P.2d 703 (1956).

2. U.C.A. 1953, 14–2–1.

3. *Kern Valley Water Co. v. Kern County*, 137 Cal. 511, 70 P. 476 (1902).

the mainland was not an improvement upon the land taxable as such and was merely a part of the realty.[4]

The mere fact that some dirt and rocks were brought upon the land from other land does not change the matter. As soon as other soil is added to soil in place, it also becomes a part of the soil. Even the addition of excrement from animals becomes land as soon as placed upon the premises. If it were not so, the farmers throughout the nation would be in trouble.

In the case of *Goddard v. Winchell*[5] a meteorite fell upon a farmer's land which was leased to a tenant. A third party, apparently with the permission of the tenant, retrieved the meteorite. The owner of the land sued to recover it and the Iowa court held that it belonged to him as owner of the land.

It seems to me that these dikes are merely bumps in and a part of the land, and as such they belong to the State of Utah and are not taxable.

---

**4.** *San Pedro L.A. & S.L.R. Co. v. City of Los Angeles*, 180 Cal. 18, 179 P. 393 (1919).

**5.** 86 Iowa 71, 52 N.W. 1124 (1892).