**CROSSROADS PLAZA ASSOCIATION, a Utah corporation, Plaintiff, Appellee, and Cross–Appellant,**

v.

**Gary PRATT, in his official capacity only, and Salt Lake County, Defendants, Appellants, and Cross–Appellees.**

No. 940454.

Supreme Court of Utah.

Feb. 22, 1996.

■■■■■■■■■■■■■■

Robert B. Lochhead, David F. Crabtree, Salt Lake City, for plaintiff.

Douglas R. Short, Mary Ellen Sloan, Salt Lake City, for defendants.

RUSSON, Justice:

Crossroads Plaza Association (Crossroads) filed an action against Gary Pratt, the Salt Lake County Treasurer, and Salt Lake County, seeking a declaratory judgment and injunctive relief regarding taxes imposed by Salt Lake County on leasehold improvements to Crossroads' real property. The trial court granted summary judgment in favor of Crossroads. Salt Lake County appeals. We reverse and remand.

## FACTS

In 1987, Chappell, Inc., a Utah corporation dba Bennetton, leased space in the Crossroads Plaza Mall to establish a retail clothing store. Bennetton made changes to the property including the installation of various walls, a ceiling, a glass storefront, carpet, and granite flooring. In June 1988, the Salt Lake County Assessor's office conducted an audit of Bennetton's property, categorizing it as trade fixtures, computer equipment, and leasehold improvements. Subsequently, the Salt Lake County Assessor submitted to Bennetton a document setting forth the leasehold improvements, including the walls, storefront, flooring and ceiling, and instructing Bennetton to indicate the year in which they were installed and the cost of installing the improvements. On the basis of Bennetton's answers, the assessor determined the taxable value of the leasehold improvements.

Each year from 1988 to 1990, Bennetton filed a personal property affidavit[1] identifying not only its personal property, but also its leasehold improvements, and paid taxes on both to Salt Lake County (the County). The County collected taxes on the leasehold improvements from Bennetton through its personal property tax collection system pursuant to an administrative rule of the tax commission which provides, "A. Leasehold improvements under the control of the lessee shall be taxed as personal property of the lessee." Utah Admin.Code R884–24P–32.

In 1991, Bennetton failed to file its personal property affidavit. The County notified Bennetton of the delinquency and assessed taxes against Bennetton based on the previously submitted affidavits. When Bennetton failed to pay any of its 1991 property tax, the assessor held a sale of Bennetton's personal property to recover the taxes due on the personal property pursuant to section 59–2–1310(1) of the Utah Code, which provides, "The [county] treasurer shall collect the taxes delinquent on personal property ... by seizure and sale of any personal property owned by the delinquent taxpayer." The record indicates that the County did not intend to sell any of Bennetton's leasehold improvement property. After the sale of the personal property, the county assessor served notice of the amount of tax due on the leasehold improvements to Crossroads, the owner of the underlying realty. Crossroads filed a written objection with the County, arguing that the tax notice was an impermissible double taxation and objecting to the County's purported authority for assessing the disputed tax to Crossroads. Without responding to Crossroads' objection, the County subsequently included the disputed tax on the leasehold improvements in Crossroads' 1992 real property tax notice and placed a lien on Crossroads' real property for the tax due pursuant to section 59–2–1325 of the Utah Code, which states:

A tax upon real property is a lien against the property assessed. *A tax due upon*

---

1. The affidavit is authorized by section 59–2–306(1) of the Utah Code, which provides in relevant part, "The county assessor may request a signed statement in affidavit form from any per-son setting forth all the real and personal property assessable by the assessor which is owned, possessed, managed, or under the control of the person...."

*improvements upon real property assessed to a person other than the owner of the real property is a lien upon the property and improvements.* These liens attach as of January 1 of each year.

(Emphasis added.)

In 1992, Crossroads paid the disputed tax under protest and subsequently filed suit against the County, claiming that (1) the County's demanding payment of the taxes due on Bennetton's leasehold improvements was a double assessment of property in violation of Utah law; (2) the collection of the disputed tax from a party unrelated to Bennetton, to whom the tax was originally assessed, was a violation of Utah law; and (3) the levy, assessment, and collection of the disputed tax from Crossroads or as part of Crossroads' real property tax assessment was a violation of Utah law. The County responded, claiming that Crossroads, as the owner of the underlying property, is responsible for the taxes due on the leasehold improvements of its tenants pursuant to section 59–2–1325 of the Utah Code. Both parties moved for summary judgment.

In its motion, Crossroads primarily argued that because the leasehold improvements had been taxed as personal property under tax commission rule 884–24P–32, Crossroads was not liable for the tax. During the summary judgment hearing, Crossroads stated: "And so we have the issue well before us. The argument that decides the entire case is based entirely on statutory language and on the rule promulgated by the Tax Commission." The court granted summary judgment in favor of Crossroads, concluding that because the leasehold improvements were in the control of the lessee, rule 884–24P–32, which provides that leasehold improvements be taxed as personal property, applied. The court concluded that section 59–2–1325 did not apply. On appeal, the County argues that the court erred in finding (1) that rule 884–24P–32 was the governing law, and (2) that leasehold improvements are personal property and therefore taxable only to the leaseholder, not to the owner of the underlying realty.

## STANDARD OF REVIEW

■ Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 256 (Utah 1994). "Because a challenge to summary judgment presents for review only questions of law, we accord no deference to the trial court's conclusions but review them for correctness." *Id.; see Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1111–12 (Utah 1991).

## ANALYSIS

We begin by addressing the apparent discrepancy between tax commission rule 884–24P–32 and section 59–2–1325 of the Utah Code. As did the trial court, we assume for the sake of this part of the analysis that the property in question was "leasehold improvements." Crossroads argues that under rule 884–24P–32, "leasehold improvements" are specifically taxed as *personal property* which are in the control of Bennetton and for which Crossroads is not responsible. That rule states:

A. Leasehold improvements under the control of the lessee *shall be taxed as personal property of the lessee.*

B. If not taxed as personal property of the lessee, the value of leasehold improvements shall be included in the value of the real property.

(Emphasis added.)

On the other hand, the County argues that rule 884–24P–32 only *describes the method* by which "leasehold improvements" should be taxed, without establishing that "leasehold improvements" are personal property and that the tax on leasehold improvements is actually controlled by section 59–2–1325 of the Utah Code, which states:

A tax upon real property is a lien against the property assessed. A tax due upon *improvements upon real property* assessed to a person other than the owner of the real property *is a lien upon the property*

*and improvements.* These liens attach as of January 1 of each year.

(Emphasis added.)

The trial court held that rule 884–24P–32 applied in this case and that section 59–2–1325 did not apply. The trial court concluded: "In light of the Court's finding that the leasehold improvements were in the control of the lessee, [rule 884–24P–32] ... applies in this case.... Section 59–2–1325 of the Utah Code is not a fall-back to the Rule promulgated by the Tax Commission...." The trial court determined that these provisions could not be harmonized and chose to apply the rule over the statute.

 "It is a longstanding principle of administrative law that an agency's rules must be consistent with its governing statutes." *Sanders Brine Shrimp v. Audit Div.,* 846 P.2d 1304, 1306 (Utah 1993). Further, "[a]n administrative rule out of harmony or in conflict with the express provisions of a statute 'would in effect amend that statute.'" *Consolidation Coal Co. v. Utah Div. of State Lands & Forestry,* 886 P.2d 514, 532 (Utah 1994) (Bench, J., concurring and dissenting) (quoting *Olson Constr. Co. v. State Tax Comm'n,* 12 Utah 2d 42, 45, 361 P.2d 1112, 1113 (1961)). With these principles in mind, we begin our analysis of these provisions.

 We first address the County's argument that rule 884–24P–32 can be read consistently with the tax code and that the trial court erred in finding rule 884–24P–32 to be the only governing law. " 'Rules made in the exercise of a power delegated by statute should be construed together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason.'" *Id.* at 527 n. 22 (quoting *McKnight v. State Land Bd.,* 14 Utah 2d 238, 245, 381 P.2d 726, 731 (1963)). Tax commission rule 884–24P–32 was promulgated pursuant to section 59–2–303 of the Utah Code, which sets out the general duties of the county assessor. This section states:

Prior to May 22 of each year, the county assessor shall ascertain the names of the owners of all property which is subject to taxation by the county, and shall assess the property to the owner, claimant of record, or occupant in possession or *control* [of the property].

(Emphasis added.) "In interpreting this statute, we look to the plain meaning of the language at issue to discern the legislative intent." *Chris & Dick's Lumber & Hardware v. Tax Comm'n,* 791 P.2d 511, 514 (Utah 1990). This section specifically allows the assessor to assess property to one in control of the property. Rule 884–24P–32, which provides that leasehold improvements *under the control of the lessee* be taxed as personal property of the lessee is consistent with this statute. *See also Valley Fair Fashions, Inc. v. Valley Fair,* 54 Cal.Rptr. 306, 307, 245 Cal.App.2d 614 (Dist.Ct.App.1966) (holding that statute similar to section 59–2–303 authorized assessment of improvements to the tenant in control of the improvements).

The very statute Crossroads seeks to avoid provides, "A tax due upon improvements upon real property *assessed to a person other than the owner of the real property* is a lien upon the property and improvements." Utah Code Ann. § 59–2–1325 (emphasis added). It is obvious from the plain language of this section that the legislature contemplated that a tax on improvements might be assessed to someone other than the owner of the underlying property.

Read consistently with the governing statutes, rule 884–24P–32 does not transform improvements into personal property, but rather in light of sections 59–2–303 and 59–2–1325, the rule provides a means of assessing such improvements "to a person other than the owner of the real property." Thus, leasehold improvements taxed "*as*" personal property means that such improvements will be taxed "*in the way or manner*" in which personal property is taxed. *Webster's Ninth New Collegiate Dictionary* 106 (1984) (emphasis added). Moreover, the second part of the rule at issue provides, "(B) If not taxed as personal property of the lessee, the *value of leasehold improvements shall be included in the value of the real property.*" Utah Admin.Code R884–24P–32(B) (emphasis added). Because this part of the rule refers to leasehold improvements in the context of *real property* valuation, it further indicates that the first part of the rule at issue here merely

provides for leasehold improvements to be taxed in the way in which personal property is taxed and can be read consistently with section 1325.[2]

■ Tax commission rule 884–24P–32 does not contravene the requirement of section 59–2–1325 of the Utah Code that "a tax due upon improvements upon real property . . . is a lien upon the property." To the extent the trial court found that rule 884–24P–32 controlled the dispute, it erred. An "agency rule cannot 'trump' a [statutory provision]." *Consolidation Coal Co.,* 886 P.2d at 532 (Bench, J., concurring and dissenting). Other jurisdictions have also held that a tax due on improvements to real property is a lien on that property regardless of whether the local assessor may assess the tax to the lessee in control of the improvements. For example, in *Koester v. Hunterdon County Board of Taxation,* 79 N.J. 381, 399 A.2d 656 (1979), the court stated: "In *Becker* the local assessor had for years assessed the value of the building to its owner and the value of the leased land on which it stood to its owner. The Court of Errors and Appeals held that notwithstanding this practice, the landowner remained liable for the tax on the entire parcel including the building . . . ." *Id.* at 662 (citing *Becker v. Mayor of Little Ferry,* 19 A.2d 657, 659 (N.J.1941)). The court in *Koester* went on to hold that separately taxed mobile homes on leased property remained taxable as real property. *Id.* at 663.

■ To determine whether section 59–2–1325 applies to Bennetton's leasehold improvements, we must determine whether "leasehold improvements" are improvements to real property for tax purposes. Although the tax code does not define "leasehold improvements," it does define "improvements," which are included in the code's definition of "real estate or property."[3] Utah Code Ann. § 59–2–102(20). "Improvements" include "all buildings, structures, fixtures, fences, and improvements erected upon or affixed to

the land, *whether the title has been acquired to the land or not."* Utah Code Ann. § 59–2–102(11) (1992) (emphasis added). It is clear from this wording that the legislature contemplated that improvements might be made to property in which types of interest other than title may be held. We must assume that since the legislature did not specifically exclude "leased property" from those nontitle lands, improvements to leased property are included in this definition. *Accord Interwest Aviation v. County Bd. of Equalization,* 743 P.2d 1222, 1224 (Utah 1987) (implicitly holding that structures in question were "improvements" even though affixed to leased real property); *Great Salt Lake Minerals & Chems. Corp. v. State Tax Comm'n,* 573 P.2d 337, 340 (Utah 1977) (same); *see also* Utah State Tax Commission, Property Tax Division, *Personal Property Tax Standards* 2 (1992) (defining "leasehold improvements" to mean *"improvements* or additions to leased real property that have been made by the lessee (tenant)" (emphasis added)).

Because "leasehold improvements" are "improvements" and "improvements" are real property, "leasehold improvements" are real property for tax purposes. Thus, we conclude that section 59–2–1325 applies to leasehold improvements. "A contrary conclusion strains the express language contained [in the statute] and thwarts the imposition of taxes." *Great Salt Lake Minerals & Chems. Corp.,* 573 P.2d at 340. Under Utah law, when a tax on leasehold improvements is due, section 59–2–1325 of the tax code specifies that a lien is placed on the underlying real property. We therefore reverse the trial court's conclusion that section 59–2–1325 does not apply to Bennetton's leasehold improvements.

■ However, because the trial court assumed that the property in question was "leasehold improvements" and then errone-

---

**2.** Crossroads argues that this court does not have jurisdiction to invalidate the tax commission rule because to maintain a judicial challenge to an administrative rule, an aggrieved person must exhaust all administrative remedies under the Utah Administrative Rulemaking Act, which, Crossroads argues, the County has not done.

Inasmuch as we find the administrative rule on leasehold improvements to be consistent with the Tax Code, we do not address this issue.

**3.** We construe this definition as applying to "real estate" or "real property."

ously concluded that rule 884–24P–32 establishes that "leasehold improvements" are personal property, it did not reach the parties' arguments as to whether the property in question would otherwise qualify as "improvements" to real property. Thus, we now address the parties' legal arguments as to what constitutes an "improvement" to real property to guide the trial court's disposition of this issue on remand.

As it did in its motion below, the County argues on appeal that the property in question was "improvements to real property" by virtue of its being affixed to the underlying property. The County argues that under Utah law, "affixation" is the sole test of whether a structure is an improvement to real property for tax purposes. Crossroads argues, however, that the property in question was not "improvements" because it was not permanently affixed and it did not materially enhance the value of Crossroads' property.

Crossroads argues that to be "improvements to real property," structures must meet the test set forth in a mechanic's lien case, *Paul Mueller Co. v. Cache Valley Dairy Ass'n*, 657 P.2d 1279 (Utah 1982). *Mueller* involved a former Utah statute under which unpaid contractors could enforce a mechanic's lien upon the real property which was improved by their work. Utah Code Ann. §§ 38–1–3, 38–1–4 (1953). The statute applied only to buildings, structures, or improvements to property and did not include the installation of equipment or personal property. *Id.* To distinguish between real and personal property, the court used a three-part test, considering

"(1) [the] manner in which the item is attached or annexed to realty; (2) whether the item is adaptable to the particular use of the realty; and (3) the intention of the annexor to make an item a permanent part of the realty."

*Paul Mueller Co.*, 657 P.2d at 1283 (alteration in original) (quoting *State v. Papanikolas*, 19 Utah 2d 153, 155, 427 P.2d 749, 751 (1967)). *Mueller* affirmed the trial court's finding that under the three-part test, the equipment in question was personal property, not improvements to real property. *Id.*

at 1283–85. While this court may have endorsed this test for purposes of a mechanic's lien, more recently, in *Morton International, Inc. v. Auditing Division of Utah State Tax Commission*, 814 P.2d 581, 594 (Utah 1991), we rejected this type of functional analysis to determine whether property is real property for taxation purposes. We noted that "the case law from other jurisdictions is at best conflicting in this area. There are jurisdictions that have not followed a functional approach in interpreting similar statutes. Furthermore, the jurisdictions that have adopted a functional approach have reached conflicting conclusions." *Id.* (footnotes omitted). In *Morton International*, this court upheld as reasonable a tax commission determination that flooring, walls, and ceiling were real property for tax purposes, not equipment exempt from sales and use taxes. We reasoned that given the inconsistencies between the controlling statute and governing rule and the conflicting case law, the Commission's determination was not to be disturbed. *Id.*

As in *Morton International*, we decline to adopt the test urged by Crossroads. We find guidance instead in our past interpretations of the tax code. "Improvements" include "all buildings, structures, fixtures, fences and improvements *erected upon or affixed to the land,* whether the title has been acquired to the land or not." Utah Code Ann. § 59–2–102(11) (1992) (emphasis added). In *Nickerson Pump & Machinery Co. v. State Tax Commission*, 12 Utah 2d 30, 33, 361 P.2d 520, 521–22 (1961), construing a former sales and use tax statute, we held that water pumps, although installed, did not become real property for tax purposes. We reasoned that the placement was "incidental" to the purpose of the water pumps and a "mere convenience for the purchaser because of the great weight of the pumps," and we compared the pumps to "a massive desk or refrigerator built to specifications." *Id.* More recently, however, in *Chicago Bridge & Iron Co. v. State Tax Commission*, 839 P.2d 303 (Utah 1992), we recognized there may be factual disputes as to the distinction between tangible personal property and real property and found reasonable a tax commission rul-

ing that certain items were real property *"once attached"* to the property. *Id.* at 307 (emphasis added). Similarly, in another tax case, we reiterated that a Utah sales tax statute identical to the property tax statute at issue in this case defines "improvements" as "all buildings, structures, fixtures, fences and improvements *erected upon or affixed to land....*" *Great Salt Lake Minerals & Chems. Corp.*, 573 P.2d at 339 (citing Utah Code Ann. § 59–3–1(3) (emphasis added); *see also Valgardson Hous. Sys. v. State Tax Comm'n,* 849 P.2d 618, 622 (Utah Ct.App.), *cert. denied,* 859 P.2d 585 (Utah 1993) ("Language in Utah tax cases supports the ... 'affixation' distinction between tangible personal property and improvement to real estate."). In light of the plain language of the statute and our recent decisions regarding "improvements," we now hold that the test of whether property is an "improvement" to real property for tax purposes is whether it is "erected upon or affixed to the land." Utah Code Ann. § 59–2–102(11) (1992).

 Further, we recognize that while "land" is not defined in the tax code, the common meaning of the word frequently includes both land and the structures built upon it. *See* Utah Code Ann. § 13–8–2(1)(e) (defining "land" for purposes of certain construction agreements to mean "any real property, including any building, fixture, improvement"); *Jeffery v. City of Salinas,* 232 Cal.App.2d 29, 42 Cal.Rptr. 486, 498–99 (1965) ("land" includes land and improvements). Thus, as in this case, if the underlying property is a building or other "improvement," this satisfies the statutory requirement that the property be affixed "to the land."

Crossroads asserts that the property in question was not "permanently" attached and that in any event it did not add value to the Crossroads property. However, the statute merely requires that the structure be "erected upon or affixed to the land" and requires neither permanency nor that the improvement materially enhance the value of the underlying property. We have previously

held that simply adding value to property does not make a change to real property an improvement. *See Backus v. Hooten,* 4 Utah 2d 364, 367, 294 P.2d 703, 705 (1956). Likewise, an improvement does not fail to qualify as an improvement under the statute merely because it fails to add value to the property. With respect to Crossroads' "permanency" argument, we note that even jurisdictions which, by statute, require that improvements be "permanently affixed" do not equate permanence with perpetuity. *See Michigan Nat'l Bank v. City of Lansing,* 96 Mich.App. 551, 293 N.W.2d 626, 627 (1980) ("It is sufficient if the item is intended to remain where affixed until worn out, until the purpose to which the realty is devoted is accomplished or until the item is superseded by another item more suitable for the purpose."), *aff'd,* 322 N.W.2d 173 (Mich.1982); *San Diego Trust & Sav. Bank v. San Diego County,* 16 Cal.2d 142, 105 P.2d 94, 98 (1940), *cert. denied,* 312 U.S. 679, 61 S.Ct. 449, 85 L.Ed. 1118 (1941) (same).

Whether property constitutes "improvements" to real property for tax purposes depends on whether such property is "erected upon or affixed to" the underlying property. Utah Code Ann. § 59–2–102(11) (1992). In this case, because the trial court found that the property in question was personal property as a matter of law, it did not reach the question of whether the property in question was in fact "improvements" to real property. On remand, we direct the trial court to determine whether the property in question constitutes "improvements" under the "affixation" test we have enunciated.

## CONCLUSION

 Under Utah law, leasehold improvements are improvements to real property for tax purposes. While taxes on leasehold improvements may be assessed and collected from the lessee in control of such improvements, owners of the underlying real property are ultimately responsible for taxes due on such improvements under

section 59–2–1325 of the Utah Code.[4] In the instant case, Crossroads, as the owner of the property underlying Bennetton's leasehold improvements, is responsible for unpaid taxes on such improvements.[5] The trial court's legal conclusion that the taxes on leasehold improvements under Bennetton's control are collectable only from Bennetton is in error, and therefore, we reverse the trial court's grant of summary judgment in favor of Crossroads and remand to the trial court for further proceedings consistent with this opinion.[6]

ZIMMERMAN, C.J., STEWART, Associate C.J., HOWE and DAVIS, JJ., concur.

DURHAM, J., having disqualified herself, does not participate herein; LYNN W. DAVIS, District Judge, sat.

---

4. We recognize that this rule as applied to mall owners may seem somewhat harsh given their particular circumstances with respect to leasehold improvements on their property. However, a change in the statutory provision underlying our decision today is a question properly within the province of the legislature.

5. We do not address whether the County's action in this case amounts to a double assessment of taxes. Although Crossroads raises this issue, its briefing is inadequate. "[A] 'reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the ... party may dump the burden of argument and research.' " *Butler, Crockett & Walsh Dev. Co. v. Pinecrest Pipeline*

*Operating Co.*, 909 P.2d 225 (1995) (quoting *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988)). For the same reason, we do not address whether due process problems exist in Crossroads' case.

We likewise do not address whether the County's failure to give timely notice of the tax on the leasehold improvements invalidates any lien that would otherwise arise on Crossroads' property. We find no evidence in the record that Crossroads raised this issue before the trial court, and we will not consider it on appeal. *Kennecott Corp. v. State Tax Comm'n*, 862 P.2d 1348, 1352 (Utah 1993); *Ong Int'l (U.S.A.), Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 455 (Utah 1993).

6. Because we reverse and remand, we do not reach Crossroads' cross-appeals regarding the calculation of interest and fees.