WATSON BROS. REALTY CO., A NEBRASKA CORPORATION, APPELLANT, v. COUNTY OF DOUGLAS ET AL., APPELLEES.

32 N. W. 2d 763

Filed June 18, 1948. No. 32360.

*Beber, Klutznick, Beber & Kaplan,* for appellant.

*James J. Fitzgerald* and *Ephraim L. Marks,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

In this action plaintiff seeks an injunction restraining the collection of a part of a real estate tax. Issues were made and trial had. The trial court dismissed the plaintiff's petition with prejudice. We affirm the judgment of the trial court.

Plaintiff is and in 1943 was the owner of a tract of land in the city of Omaha. Sometime after June 1, 1943, it started the erection of a building on this land. On April 1, 1944, the building was in the process of construction. As of that date and with the building in an incompleted condition the property was assessed at $12,160 for the land and $30,000 for the improvements. Plaintiff did not then and does not now question the validity of that tax. The construction of the building was completed in June 1944. As of April 1, 1945, the building was assessed at $72,000, which added $42,000 to the previous assessment. This was reported to the county assessor and by him included in the assessment roll filed with the county clerk. This was done prior to the convening of the board of equalization. The board of equalization confirmed and ratified the assessment valuation, and thereafter taxes based on that assessment were levied. No notice of the action of the assessor or the board of equalization was sent to plaintiff.

Plaintiff does not question the amount of the increase but challenges the validity of the increase made as of April 1, 1945.

The trial court found that the assessment of April 1, 1945, was made under authority of section 77-1306, R. S. 1943, and that plaintiff was not entitled to a formal notice of the assessment.

The plaintiff's contention is that the increase was put upon the value of a building in existence on April 1,

1944, and falls within the provisions of section 77-1315, R. S. 1943, and that notice was required.

Section 77-1306, R. S. 1943, is as follows: "Each assessor shall annually, at the time of taking the list and valuation of personal property, also take a list of all real property that shall have become subject to taxation since the last previous listing of the property in the county, with the value thereof, and of all buildings and all other improvements of any kind, if over one hundred dollars in value, which shall not have been previously included in the value of the land and lots on which such improvements have been made, and shall make return thereof to the county assessor at the same time he is required to make his returns of personal property. In the return he shall give a description of the tract of land or lot upon which the improvement has been made, the kind of improvement so made, and the true value added to such parcel of land or lots by such improvements. The additional sum it is believed the land or lot on which such improvement has been made would sell for at private sale by reason of such improvement, shall be considered the value of such improvement, and taxed thereafter at such value until the next assessment."

Section 77-1315, R. S. 1943, is as follows: "The precinct assessors shall complete their assessment rolls, schedules, lists and returns, and deliver the same to the county assessor for revision, not later than the last Monday of May in each year. The county assessor shall complete his revision of the same and shall file them with the county clerk on or before the second Monday of June of each year. In years in which real estate is assessed for taxation purposes, it shall be the duty of the county assessor, before such filing, to notify the record owner of every piece of real estate which has been valued at a higher figure than at the last previous assessment. Such notice may be given by postcard, addressed to said owner's last known address. It shall describe said real estate, and state the old and new valuation thereof

and the date of the convening of the board of equalization."

It seems clear from a reading of the sections that the added value of the real estate involved resulting from the completion of the building after April 1, 1944, falls within the classification of "buildings and all other improvements" made in section 77-1306, R. S. 1943.

"Generally speaking, the word 'improvement' may be said to include everything that enhances the value of premises permanently for general uses. It includes not only buildings and fixtures, but also many other things which are not buildings or fixtures. Among the most common illustrations of improvements may be enumerated the erection of a building, the replacing of old buildings with new ones, the making of substantial additions or changes in existing buildings, the erection of fences or of a necessary sidewalk alongside property, the digging of wells thereon, or the planting of a fruit orchard." 27 Am. Jur., Improvements, § 2, p. 260. It may be an independent structure or an addition to or betterment of a building already in existence. Wimberly v. Mayberry & Co., 94 Ala. 240, 10 So. 157, 14 L. R. A. 305. It consists in the betterment of the premises. Ames v. Trenton Brewing Co., 56 N. J. Eq. 309, 38 A. 858; Provident Mutual Life Ins. Co. v. Doughty, 125 N. J. Eq. 442, 6 A. 2d 184; Harris v. Kelley, 10 Sadler 185, 13 A. 523. (The Harris case dealt with a wooden floor put in a building over a brick floor.)

It seems equally clear that the added value does not fall within the classification of "real estate which has been valued at a higher figure than at the last previous assessment" contained in section 77-1315, R. S. 1943. It is obvious that the materials and labor which went into the building after April 1, 1944, and the value resulting therefrom, were a new value which was not and could not have been included in the "last previous assessment."

The new value was properly subject to assessment under the provisions of section 77-1306, R. S. 1943.

Plaintiff's next contention is that the tax levied under the assessment is void because it was not notified as provided by section 77-1315, R. S. 1943. Clearly the notice there provided relates to an increased assessment of property previously assessed. It also is clear that the tax involved herein is not within that provision. The reason for the inclusion of that provision is stated in Rosenbery v. Douglas County, 123 Neb. 803, 244 N. W. 398. The Legislature intended that the owner of realty might rely upon the last previous assessed valuation as being that at which it would be returned again, and that he could rest secure against any increase over the last previous assessed valuation of his realty, unless he was given notice of the increase and was afforded an opportunity to appear before the board of equalization and contest the increase if he desired.

The reason for the rule does not exist here. Here the plaintiff knew that it had placed improvements on its realty which had not previously been included in the value of the land upon which the improvements were made. Likewise, the plaintiff was charged with notice that it was the duty of the assessor to return the value of the improvements, and that until the next assessment the property would be taxed at such value. It likewise was charged with notice of the statutory duty of the assessor, county clerk, and board of equalization, and of its statutory rights in the matter. The amount of the value placed upon the added improvements was of course a matter of public record. The Legislature specifically required that the assessor, when requested, should deliver to the person assessed a signed copy of the statement of property required by section 77-1306, R. S. 1943, showing the valuations of the property so listed. § 77-1308, R. S. 1943. Such a requirement would be a useless thing if it were the duty of the assessor to give that notice under the provisions of section 77-1315, R. S. 1943. Obviously, the Legislature did not intend that the notice required by section 77-1315, R. S.

1943, was likewise required in assessments made; as here, under section 77-1306, R. S. 1943. For the reasons herein given no such notice was required.

The judgment of the district court is affirmed.

AFFIRMED.

YEAGER, J., dissenting.

I cannot agree with the majority opinion in this case. I respectfully submit that it contains a misunderstanding and erroneous application of controlling statutory provisions. The following, I am persuaded, should be the opinion and determination upon the issues presented.

The plaintiff was the owner of the real estate and improvements involved in 1944 as well as in 1945. In 1944 the land was assessed at a valuation of $12,160 and improvements thereon at $30,000. The improvements at that time consisted of an incomplete large structure which was designed for use as a trucking depot. How nearly complete it was on the assessment date in 1944 is not disclosed. It had been started in 1943 and was completed some time near the middle of 1944. The chief deputy county field assessor furnished the valuation for the assessment of 1944. As of April 1, 1945, he also furnished an increased valuation for the improvements in the amount of $42,000. Assessment was carried out against the real estate by the county assessor accordingly. Just how this was done is not made clear. There appears to have been nothing in the nature of a return. It is inferable that it was done alone by entry on the book of real estate descriptions prepared by the county clerk for the real estate assessment of 1944. No notice of the increased assessment was given to plaintiff.

Pursuant to the assessment of 1944 together with the increased value of improvements added in 1945 taxes were levied in 1945. Plaintiff contends that the tax based on the increased value of improvements is void and it is this tax that plaintiff seeks to have enjoined.

The theory of the plaintiff is substantially that the county assessor was without power to increase the value

of these improvements in 1945, that year not being a regular one for the assessment of real property, and also that even if they could properly be added such addition was invalid in the absence of notice thereof to it.

The defendants contend substantially that the county assessor acted within his power, that what was done was not within the meaning of the law to increase the valuation of improvements but was an addition of improvements within the meaning of section 77-1306, R. S. 1943, and that since the statutes did not provide that notice should be given in such instances none was required.

A decision of the questions presented by this appeal necessitates an analysis of a number of statutory provisions relating to the assessment and taxation of real property. Section 77-1301, R. S. 1943, made provision for the assessment of all real property in the state subject to assessment for taxation as of April 1 of each even-numbered year. It was as follows:

"All real property in this state subject to taxation shall be assessed as of April 1 in each even-numbered year, which assessment shall be used as a basis of valuation for taxation until the next regular assessment, except as provided in sections 77-1306 and 77-1307."

Section 77-1306, R. S. 1943, made provision for assessment of improvements which had been added since the assessment of the last even-numbered year and was as follows:

"Each assessor shall annually, at the time of taking the list and valuation of personal property, also take a list of all real property that shall have become subject to taxation since the last previous listing of the property in the county, with the value thereof, and of all buildings and all other improvements of any kind, if over one hundred dollars in value, which shall not have been previously included in the value of the land and lots on which such improvements have been made, and shall make return thereof to the county assessor at the same

time he is required to make his returns of personal property. In the return he shall give a description of the tract of land or lot upon which the improvement has been made, the kind of improvement so made, and the true value added to such parcel of land or lots by such improvements. The additional sum it is believed the land or lot on which such improvement has been made would sell for at private sale by reason of such improvement, shall be considered the value of such improvement, and taxed thereafter at such value until the next assessment."

This section and section 77-1309, R. S. 1943, provided the mechanics for the assessment of improvements which had been added. Section 77-1309 provided as follows: "The precinct assessor shall forward to the county assessor the schedules of personal property assessments taken by him from time to time, and from these schedules the county assessor shall make up the books of assessment in his office; and on or before the last Monday in May of each year he shall appear before the county assessor and verify under oath the book of real estate assessment and the schedules of personal property assessments theretofore taken and returned by him, substantially in the following form:   * * *."

It will be observed that section 77-1306 required that the assessor, obviously meaning precinct assessor when considered with the entire context of the section, at the time of taking the list and valuation of personal property should take a list of all real property that had become subject to taxation since the last previous listing of the property in the county, with the value thereof, and all buildings and all other improvements of any kind, if over one hundred dollars in value, which had not been previously included in the value of the land and lots on which such improvements had been made, and make return thereof to the county assessor, and section 77-1309 provided that on or before the last Monday in May of each year the precinct assessor should appear be-

fore the county assessor and verify under oath the book of real estate assessment.

There was no statute imposing a like or similar duty upon the county assessor or any of his deputies and none permitting the county assessor or his deputies in the odd-numbered years to in anywise carry out an assessment against real property or improvements not previously assessed, except in the performance of his proper functions after return had been made by precinct assessors agreeable to the provisions of sections 77-1306 and 77-1309.

There was clearly a noncompliance with these statutory provisions. It must then be ascertained whether this was but an irregularity still leaving this a valid and proper assessment of added improvements on real estate in an odd-numbered year or an act by the county assessor without jurisdiction amounting instead to an attempted increase in a valuation fixed in an even-numbered year.

If what was done may be considered but an irregularity then on that ground plaintiff is not entitled to equitable relief. Wood v. Helmer, 10 Neb. 65, 4 N. W. 968; South Platte Land Co. v. City of Crete, 11 Neb. 344, 7 N. W. 859; Touzalin v. City of Omaha, 25 Neb. 817, 41 N. W. 796; Spargur v. Romine, 38 Neb. 736, 57 N. W. 523; Bellevue Improvement Co. v. Village of Bellevue, 39 Neb. 876, 58 N. W. 446; Rothwell v. Knox County, 62 Neb. 50, 86 N. W. 903.

Injunction however will lie to restrain the collection of a tax when in making the assessment the taxing officers acted without jurisdiction. Rothwell v. Knox County, *supra;* Crane Co. v. Douglas County, 112 Neb. 365, 199 N. W. 791.

An illustration of the rule that a mere irregularity does not entitle one to equitable relief is found in South Platte Land Co. v. City of Crete, *supra.* There it was pointed out that failure to have afforded opportunity to appear before the board of equalization in the absence

of a showing that the property was assessed too high furnished no ground for relief.

In Wood v. Helmer, *supra,* it was pointed out that the failure to attach the oath of the assessor was not jurisdictional.

In Bellevue Improvement Co. v. Village of Bellevue, *supra,* it was pointed out that the failure to attach the oath of the assessor together with a showing that the valuation was not based on the assessor's judgment was not jurisdictional.

On the other side no pertinent illustrations have been found in the decisions of this court but in Touzalin v. City of Omaha, *supra,* it was said: "The rule is, that where public officers are proceeding illegally under claim of right they may be enjoined." The principle there announced was adhered to in Rothwell v. Knox County, *supra,* and Crane Co. v. Douglas County, *supra.*

Was the county assessor proceeding illegally under claim of right in the situation presented by the record herein? I think that he was.

As pointed out the assessor by the aid of his chief deputy field assessor assumed to perform a function committed by sections 77-1306 and 77-1309 of the statutes to the precinct assessor. Also no return as required by these sections was made. Reference to other statutory provisions also serves to demonstrate that the action by the county assessor was illegal.

As already pointed out section 77-1301, R. S. 1943, made April 1 of each even-numbered year the time for the assessment of real property. By section 77-1303, R. S. 1943, the county clerk in counties having a population of 200,000 or more was required on or before April 1, in detail which it is not necessary to set out here, to make up books, or unit valuation ledgers, for the assessment of real property. Section 77-1305 required delivery of these books to the assessor on or before April 1. Section 77-1311, R. S. 1943, required that all assessment rolls, lists, and returns, as soon as corrected and verified,

should be filed with the county clerk. Section 77-1315, R. S. 1943, required that this should be done not later than the last Monday in May.

This was the end of the statutory relationship of the county assessor to the assessment of real estate in his county, with two exceptions, until the next even-numbered year. The rolls, lists, and returns were gone from him and they thereafter reposed with the county clerk.

There was provision for correction of assessment thereafter and the addition of omitted real property but the functions in these respects belonged not to the county assessor but to the county clerk and precinct assessors. See §§ 77-1306 and 77-1317 to 77-1319, inclusive, R. S. 1943.

The exceptions referred to were found in sections 77-1306 and 77-1307, R. S. 1943.

The exception of section 77-1306, as already pointed out, permitted only that the assessor should receive the roll, list, or return of the precinct assessor assessing added improvements but did not permit him to make such an assessment.

Section 77-1307 did impose a duty upon the county assessor to act affirmatively with regard to valuation. It had no relation to increase but only with regard to decrease where there had been destruction by fire, flood, or otherwise. In such instances it was his duty to determine the deduction which was to be made and to make return thereof to the county clerk. This has no pertinence in the present controversy and it is given attention only for the purpose of making a full and clear delineation and definition of the duties and functions of the county assessor.

If this is a correct delineation and definition of the duties and functions of the county assessor and of precinct assessors, and I think it is, then it becomes necessary to say that since statutory requirements were not complied with the purpose of making an assessment of added improvements in an odd-numbered year was not

accomplished. What was done amounted to an attempt by the county assessor to increase an assessment of improvements on real estate in an odd-numbered year and was illegal and without jurisdiction, and the tax based on such increase was void thus entitling plaintiff to injunction as prayed.

The decree should be reversed and the cause remanded to the district court with directions to enter decree in conformity with the prayers of the petition.