STATE OF NEBRASKA, APPELLEE, V. RICHARD JAMES ELLEFSON, APPELLANT.

435 N.W.2d 653

Filed February 10, 1989.   No. 88-175.

Rodney W. Smith for appellant.

Robert M. Spire, Attorney General, and Donald E. Hyde for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Defendant has appealed from the judgment of the district court which denied his motion for postconviction relief after an order refusing to disqualify the trial judge from conducting such proceedings. We affirm.

Following a trial by jury, defendant was convicted of an August 11, 1981, burglary and first degree sexual assault committed in rural Knox County. The evidence upon which he was convicted included a description by the victim, footprints roughly matching defendant's boots, tire tracks matching the tires on defendant's truck, and an oral and written confession by the defendant. On direct appeal, raising among other claims that his confession was the result of threats and promises and the product of incomplete *Miranda* advice, his conviction was sustained. See *State v. Ellefson*, 214 Neb. 747, 336 N.W.2d 88 (1983).

Raised on appeal from the denial of postconviction relief are the refusal of the trial judge to recuse himself and a claim of ineffective assistance of counsel.

A defendant seeking postconviction relief has the burden of establishing a basis for such relief, which is available only when a constitutional right has been infringed or violated; and the findings of the district court will not be disturbed unless clearly

erroneous. *State v. Reddick*, 230 Neb. 218, 430 N.W.2d 542 (1988); *State v. Painter*, 229 Neb. 278, 426 N.W.2d 513 (1988).

An alleged criminal has the constitutional right to the effective assistance of counsel. *Reddick, supra.* To sustain a successful claim of ineffective assistance of counsel, a defendant must prove that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense. *State v. Kuil, ante* p. 62, 434 N.W.2d 700 (1989).

A motion to disqualify a judge on the ground of bias or prejudice is addressed to the judge's discretion, and an order overruling such a motion will ordinarily be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *Reddick, supra.* A party seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *State v. Bird Head*, 225 Neb. 822, 408 N.W.2d 309 (1987).

The facts of this case relating to the original conviction are set forth in detail in *Ellefson, supra.* Following his conviction, and from June 29, 1984, to February 7, 1986, the defendant wrote seven letters to the district judge, generally declaring that he had been wrongfully convicted and demanding that the judge release him.

The defendant points to four specific areas in which he believes that his trial counsel was ineffective: in failing to investigate more thoroughly the possibility that one of the defendant's coworkers in the area of the crime was the perpetrator, in not calling a medical expert to refute the testimony of the State's expert serologist, in not investigating the men who obtained his confession, and in not presenting sufficient evidence to support a change of venue.

## COWORKER AS PERPETRATOR

Defendant claims that his trial counsel was ineffective in not calling any of the coworkers to testify and in not investigating their backgrounds. Trial counsel did not check the criminal records of the coworkers, but he did locate and talk to every one of them. Counsel testified that he knew of the physical description which the victim had given of the attacker and that none of the defendant's fellow workers matched that description. Thus, he did not feel it prudent to call these men to the stand.

To assert a successful claim of ineffective assistance of counsel, a defendant must prove that his attorney failed to perform as well as an attorney with ordinary training and skill in the criminal law in the area, that the defendant's interests were not conscientiously protected, and that if the defendant's attorney had been effective, there is a reasonable probability that the results would have been different. *State v. Painter*, 229 Neb. 278, 426 N.W.2d 513 (1988).

The evidence does not support the defendant's claim of ineffective assistance of counsel. A defense attorney has " 'a duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary.' " (Emphasis supplied.) *Id*. at 281, 426 N.W.2d at 516, citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Trial counsel did investigate the possibility that one of the defendant's coworkers could have been the attacker, and after meeting with them, made a reasonable determination that, as none of them matched the physical description given by the victim, no benefit would be derived from putting them on the stand.

The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves ineffective, will not, without more, sustain a finding of ineffectiveness of counsel. *State v. Broomhall*, 227 Neb. 341, 417 N.W.2d 349 (1988). In counsel's judgment, calling the fellow employees to the stand would not have helped the defendant's case. That decision was proper under the circumstances. See *State v. Meis*, 223 Neb. 935, 395 N.W.2d 509 (1986).

In any event, defendant has not shown what good would have come from calling the employees to the stand; i.e., he has not shown a necessary component of an ineffective assistance of counsel claim, namely, prejudice. "But even assuming counsel failed to conscientiously pursue an investigation of all potential witnesses, defendant has not met his burden of showing prejudice." *State v. Andrews*, 223 Neb. 830, 834, 394 N.W.2d 638, 641 (1986).

FAILURE TO CALL MEDICAL EXPERT

At trial, the State called a witness, a forensic serologist, who

testified about the possible origin of the blood and semen stains found on the victim's bedding. The witness testified that the victim had type A blood, that she is a "secretor," and that her PGM type is 2-1. The defendant also has type A blood, is a secretor, and has PGM type 1-1. After testing the stains on the bedding, the expert testified that the person who had the semen either had to be a type A secretor or a nonsecretor. She testified that 52 percent of the general population could fit within these classifications.

Defendant claimed that the failure of his counsel to call a medical expert for the purpose of presenting evidence on the enzyme testing in the light most favorable to the defendant constitutes ineffectiveness of counsel. Defendant feels that the fact that the victim was a 2-1 secretor whereas the defendant was a 1-1 secretor was "exculpatory evidence."

On cross-examination by trial counsel, the State's expert testified that the test results did not point to any one person, and that the semen could have come from 52 percent of the general population. This is really the only "exculpatory" value the evidence had for the defendant. The witness further testified that although the PGM type found in the stain on the sheet was 2-1 and the defendant's type is 1-1, this is not necessarily "exculpatory," as the expert testified that a semen stain actually contains a mixture of semen and the victim's vaginal fluid, and, thus, the presence of the victim's PGM type 2-1 substance was not unusual.

Trial counsel did not conduct an independent analysis of the hair and body fluid samples. His strategy in dealing with the scientific evidence was to concentrate on the fact that the test results did not pinpoint the defendant as the perpetrator and that more than one-half of the general population could not be ruled out as being the victim's assailant. He had read materials on PGM testing. Based on the fact that the victim's body fluid mixes with the semen and that the victim's PGM type was 2-1, he determined that it would be inappropriate to call his own witness and have that witness subject to the State's cross-examination as to how the perpetrator *could* have been the defendant. He decided instead to concentrate on the fact

that the tests could not positively identify the defendant as the assailant.

In the present case, defendant's trial counsel performed as a lawyer possessing ordinary training and skill in the criminal law should have performed. He familiarized himself with the materials on the subject of PGM testing, and he knew what the State's evidence would be. He then made a conscious strategic decision not to call an expert witness for the defense, who could have done more harm than good by admitting on cross-examination that the tests did not rule out the possibility that the defendant was the assailant.

As stated in *State v. Fries*, 224 Neb. 482, 486, 398 N.W.2d 702, 705 (1987), "[T]he record discloses that the decision not to call an expert witness was carefully made and based on trial strategy," and "[t]he fact that the strategy proved unsuccessful [i.e., that the defendant was convicted] does not sustain a finding of ineffectiveness of counsel."

Finally, defendant has again failed to show in what manner he was prejudiced by this decision of his counsel.

## INVESTIGATION OF OFFICERS TAKING CONFESSION

Defendant claims that his confession was "false" and made as the result of threats and promises made by the deputy sheriff and the parole officer who interrogated him.

Although trial counsel did not have investigations done on these two people, he did examine the background and credentials of the two men at the preliminary hearing and at the hearing on the motion to suppress. He stated that he was able to explore any motivation that the men might have had to lie or "frame" the defendant.

A review of the record of the hearing on the motion to suppress and at the trial indicates that trial counsel did an admirable job of cross-examining both the deputy and the parole officer and that a great amount of information as to the men's employment histories, relationship with the defendant, etc., came out on both direct examination and cross-examination.

The defendant made no showing that, had an extensive background investigation of these two men been conducted,

information would have been made available by which to impeach their testimony regarding the truth of their version of how the confession was obtained.

## CHANGE OF VENUE

Finally, as a basis for proving ineffective assistance of counsel, defendant argues that his attorney did not present sufficient evidence in support of his motion for change of venue.

Trial counsel, on two different occasions, moved for a change of venue. Both motions were denied. He testified that he made one concerted effort to get affidavits from people in the community to the effect that defendant would be unable to get a fair trial in the county. He went from door to door and talked to approximately 20 or 25 people. He also talked to various clients and people he met during his daily activities. In spite of these efforts, he could not get anyone to sign an affidavit which would support a change of venue. Of the people with whom he spoke, they either were not aware of the case or felt that the defendant could get a fair trial in the county. Counsel also testified that he generally was comfortable having the trial in Knox County. He encountered no prejudice when picking the jury.

Again, other than the fact that he was convicted, defendant offers nothing to indicate that there was in fact any bias in the community, nor does he suggest what the result of a public opinion poll or survey would have disclosed. He has failed in his burden to show that he was prejudiced by what he terms lack of action on the part of his lawyer.

## RECUSAL OF JUDGE

As previously stated, on seven different occasions following his conviction, defendant wrote letters to the trial judge, generally declaring that he had been wrongfully convicted. He then moved to have the judge recuse himself from hearing the motion for postconviction relief on the grounds that the court could be biased because of its receipt of those letters. He argues on appeal that this correspondence was of a "threatening and accusatory nature" and that the judge was biased against him and should not have heard his motion for postconviction relief.

A motion to disqualify a judge on the ground of bias or

prejudice is addressed to the discretion of the judge, and an order overruling such a motion will ordinarily be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *State v. Reddick*, 230 Neb. 218, 430 N.W.2d 542 (1988).

Thus, the defendant has the burden of showing that the court was actually biased or prejudiced, and, hence, it is not sufficient to merely show that the court *could* have been biased or that an *appearance* of impropriety was created.

Moreover, a party seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *State v. Bird Head*, 225 Neb. 822, 408 N.W.2d 309 (1987); *State v. Gillette*, 218 Neb. 672, 357 N.W.2d 472 (1984).

To carry defendant's claim to its logical conclusion, all any party in a legal proceeding would have to do in order to disqualify a judge would be to write a series of nasty letters, and then claim "foul."

A review of the record discloses that there was no basis for requiring the district judge in this instance to disqualify himself.

There is no merit to any of defendant's contentions on appeal. The judgment of the district court is affirmed.

AFFIRMED.