Thomas Kalkowski, appellant, v. Nebraska
National Trails Museum Foundation, Inc.,
and Gregory J. Beal, appellees.

___ N.W.2d ___

Filed May 1, 2015.    No. S-14-317.

1.  **Leases: Judgments: Appeal and Error.** The interpretation of a lease is a question of law that an appellate court decides independently of the district court.
2.  **Contracts: Restitution.** Any quasi-contract claim for restitution is an action at law.
3.  **Judgments: Appeal and Error.** The judgment and factual findings of the trial court in an action at law tried to the court without a jury have the effect of a verdict and will not be set aside unless clearly wrong.
4.  ____: ____. In reviewing an action at law, an appellate court reviews the evidence in the light most favorable to the prevailing party. However, regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the lower courts.
5.  **Judges: Recusal: Appeal and Error.** A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law.
6.  **Contracts.** When the terms of a contract are clear, they are to be accorded their plain and ordinary meaning.
7.  **Contracts: Words and Phrases.** Trade terms, legal terms of art, numbers, common words of accepted usage, and terms of a similar nature should be interpreted in accord with their specialized or accepted usage unless such an interpretation would produce irrational results or the contract documents are internally inconsistent.
8.  **Unjust Enrichment.** The fact that a recipient has obtained a benefit without paying for it does not of itself establish that the recipient has been unjustly enriched.
9.  ____. Unjust enrichment occurs when there has been a transfer of a benefit without adequate legal ground.
10. **Contracts: Restitution.** Restitution is not available for an unrequested benefit voluntarily conferred, unless the circumstances of the transaction justify the claimant's intervention in the absence of a contract.
11. **Restitution.** Restitution is unavailable if it would subject an innocent recipient to a forced exchange.
12. **Contracts: Restitution.** Restitution will not be available if the effect of payment would be to complete an exchange that, had it been proposed as a contract, the recipient would have been free to reject.
13. **Judges: Recusal.** A trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown.

14.   ____: ____. A party may not rely on his or her own conduct as a way to force a judge to recuse himself or herself from the proceedings.

Appeal from the District Court for Keith County: Donald E. Rowlands, Judge. Affirmed.

Randy Fair, of Dudden & Fair, P.C., L.L.O., for appellant.

James R. Korth, of Reynolds, Korth & Samuelson, P.C., L.L.O., for appellee Nebraska National Trails Museum Foundation, Inc.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Heavican, C.J.

## NATURE OF CASE

Thomas Kalkowski donated 159 acres of land to the Nebraska National Trails Museum Foundation (NNTM). At the time of the donation, NNTM leased the land back to Kalkowski and allowed Kalkowski to farm the land. Kalkowski's upgrades to the land ultimately caused the number of certified irrigated acres (CIAs) assigned to the land to almost double. Hoping to transfer the CIAs to a nearby property, Kalkowski filed suit, claiming that he was entitled to the CIAs and that NNTM had been unjustly enriched. After a bench trial, the district court found in favor of NNTM and Gregory J. Beal, a lienholder of the property. Kalkowski now appeals that decision. We determine that Kalkowski is not entitled to the CIAs either under the lease agreement or under the theory of unjust enrichment.

In addition, while this case was pending before the judge, Kalkowski contacted the general manager of another natural resources district and inquired about the water rights associated with property owned by the judge hearing the case. After the conversation with Kalkowski, the general manager contacted the judge and the two had a discussion regarding Kalkowski. The judge then disclosed the conversation pursuant to Neb. Rev. Code of Judicial Conduct § 5-302.9(B).

Kalkowski filed a motion to recuse, arguing that the judge should have ended the conversation after Kalkowski's name

was brought up and also that the judge's status as an owner of irrigated farmland which was being leased to a farmer created a conflict of interest or at least the appearance of a conflict of interest. The district court denied the motion to recuse, and Kalkowski now also appeals that order. We hold that the district court did not abuse its discretion in denying the motion to recuse.

## BACKGROUND

*Removal of CIAs.*

In 2000, Kalkowski agreed to donate 159 acres of land located in Keith County, Nebraska, to NNTM. Due to a problem with a tax form, the land was not actually deeded to NNTM until 2003. A warranty deed granting NNTM the property in fee simple absolute and a quit claim deed were both filed with the Keith County register of deeds. This is not the first dispute between Kalkowski and NNTM concerning this parcel of land.[1]

At the time the gift was made, Kalkowski and NNTM entered into a lease agreement. Under the lease agreement, Kalkowski agreed to pay the annual taxes on the property and $500 per year in exchange for the right to farm the land. The lease will terminate if and when NNTM constructs a museum of at least 5,000 square feet which would be open to the public. A museum has yet to be built on the property.

The lease also provides that Kalkowski owns all of the irrigation equipment on the property and is responsible for all expenses related to the farming operations conducted on the real estate. With regard to improvements, Kalkowski has "the right to make any and all improvements he deems necessary." Kalkowski must "pay for and maintain these improvements," and Kalkowski has "the right to remove any and all improvements." The term "improvements" is not defined under the lease agreement.

---

[1] See, *Kalkowski v. Nebraska Nat. Trails Museum Found*., 20 Neb. App. 541, 826 N.W.2d 589 (2013); *Kalkowski v. Neb. Nat. Trails Museum Found*., No. A-07-268, 2008 WL 2839037 (Neb. App. July 22, 2008) (selected for posting to court Web site).

This dispute is over the ownership of the CIAs associated with the land. In 2004, the Nebraska Legislature granted natural resources districts more authority and autonomy in regulating ground water within their respective districts.[2] In particular, the legislation provided that each natural resources district could craft its own rules on how to best regulate the use of ground water.[3]

The Twin Platte Natural Resources District (TPNRD), where the relevant parcel of land is located, settled on a CIAs system of water management. A TPNRD representative testified that this system works by designating a finite number of acres within the district which are approved for irrigation by ground water, in conjunction with instituting a moratorium on the creation of new wells within the district. The representative testified that any acre of land within the district that had been irrigated for at least 1 year between 2001 and 2005 would be designated as a CIA by TPNRD.

The legislation also provides that subject to district approval, CIAs can be transferred "between parcels or tracts under the control of a common landowner or other person."[4] The initial certification of the CIAs by TPNRD was recorded with the register of deeds of the county where the land was located. Any subsequent transfers of the CIAs to another parcel must also be recorded with the county's register of deeds.[5]

The CIAs were assigned by TPNRD to specific parcels of land, and individual CIAs are under the control of the owner of those specific parcels of land. Unless reserved, the CIAs assigned to a particular parcel would run with the land in the event of a transfer of the real estate. The district court determined that the market value of a single CIA within the area in question is approximately $2,000 to $2,500.

Kalkowski testified that in anticipation of the impending certification process, he commenced irrigation activities on

[2] See 2004 Neb. Laws, L.B. 962, § 79.

[3] Neb. Rev. Stat. § 46-739 (Reissue 2010).

[4] § 46-739(1)(k).

[5] Neb. Rev. Stat. § 46-739.02 (Reissue 2010).

the NNTM land and cleared out shrubs and trees to increase the number of CIAs prior to the certification date. The district court determined that as a result of Kalkowski's actions, the number of CIAs on the NNTM land increased from 75.9 to 152.9. A representative from TPNRD testified that had Kalkowski done nothing between 2000 and 2005, those additional CIAs would have been lost forever and the parcel would have been certified with only 75.9 CIAs.

In 2010, Kalkowski purchased 78 acres of land near the NNTM land. Although Kalkowski had received preliminary approval from TPNRD to transfer the CIAs from the NNTM land to the newly purchased land, the NNTM board of directors refused to complete the necessary transfer documents. Kalkowski filed a complaint in the district court for Keith County alleging that NNTM would be unjustly enriched if it were allowed to maintain possession of the CIAs. Kalkowski requested that the district court either direct NNTM to execute the transfer documents or award Kalkowski the value of the benefit accrued by NNTM.

After a bench trial, the district court determined that NNTM was not unjustly enriched by Kalkowski's upgrades to the land. The district court stated that Kalkowski's "sole reason in improving the condition of the subject real estate was to benefit himself in raising crops through the implementation of irrigation on the subject real estate" and that while NNTM certainly did receive a benefit, "NNTM did nothing to encourage [Kalkowski] to remove trees or shrubbery, or to utilize his own equipment, labor, or irrigation wells located on adjacent real estate to irrigate the subject property between 2000 and 2005."

*Recusal.*

Kalkowski also assigns that the district court judge who heard the case erred in not recusing himself from the proceedings after the judge had a telephone conversation with the manager of another natural resources district regarding Kalkowski. While this case was pending before the judge, Kalkowski contacted the general manager of another natural resources district and inquired about the water rights on property owned

by the judge. The general manager then contacted the judge and indicated to the judge that Kalkowski represented himself as a prospective buyer of the judge's property within that district. The judge notified the general manager that the judge did not intend to sell his property. Kalkowski denies representing himself as a prospective buyer. Pursuant to § 5-302.9(B), the judge later notified the parties of the conversation with the general manager.

Kalkowski filed a motion to recuse, contending that the judge should not have had any further conversation with the manager after Kalkowski's name was brought up. Kalkowski also argued that the fact the judge was leasing irrigated farmland located in another natural resources district to a farmer created a conflict of interest. Finally, Kalkowski suggested that at the very least, the judge's ownership of the property created the appearance of impropriety.

The judge denied the motion to recuse. The judge ruled that Kalkowski presented no evidence that the two natural resources districts had similar rules or that the judge's tenant paid or provided the labor for the irrigation system on the judge's property. Additionally, the judge noted that it was Kalkowski's own actions which caused the general manager to contact the judge and that Kalkowski could not use his own conduct as an opportunity to "'judge-shop.'"

## ASSIGNMENTS OF ERROR

Kalkowski assigns, reordered and restated, that the district court erred in (1) ruling that Kalkowski was not entitled to the CIAs or compensation for the CIAs in lieu of transfer and (2) overruling the motion to recuse the trial judge.

## STANDARD OF REVIEW

[1] The interpretation of a lease is a question of law that an appellate court decides independently of the district court.[6]

[2-4] Any quasi-contract claim for restitution is an action at law.[7] The judgment and factual findings of the trial court in an

---

[6] *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015).

[7] *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011).

action at law tried to the court without a jury have the effect of a verdict and will not be set aside unless clearly wrong.[8] In reviewing an action at law, an appellate court reviews the evidence in the light most favorable to the prevailing party.[9] However, regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the lower courts.[10]

[5] A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law.[11]

## ANALYSIS

*Removal of CIAs.*

Kalkowski assigns that the district court erred in ruling that Kalkowski was not entitled to the additional CIAs or to compensation for the CIAs. Kalkowski set forth two different arguments as to why he is entitled to recovery: First, Kalkowski argues that under the lease agreement, he is entitled to remove the CIAs, and second, Kalkowski argues he is entitled to restitution, because NNTM was unjustly enriched.

*Recovery Under Lease Agreement.*

[6,7] The lease agreement provides that Kalkowski is entitled to remove improvements from the parcel of land. Kalkowski argues that the CIAs should be treated as improvements under the lease, which would legally entitle Kalkowski to remove the CIAs. The lease agreement does not define the term "improvements"; therefore, we give the term its plain and ordinary meaning.[12] "Trade terms, legal terms of art, numbers, common words of accepted usage and terms of a similar nature should

---

[8] *Kissinger v. Genetic Eval. Ctr.*, 260 Neb. 431, 618 N.W.2d 429 (2000).

[9] *Id.*

[10] *Id.*

[11] *Young v. Govier & Milone*, 286 Neb. 224, 835 N.W.2d 684 (2013).

[12] *Pavers, Inc. v. Board of Regents*, 276 Neb. 559, 755 N.W.2d 400 (2008).

be interpreted in accord with their specialized or accepted usage unless such an interpretation would produce irrational results or the contract documents are internally inconsistent."[13] Our interpretation of the term "improvements," as a legal term of art, should be informed by its typical usage within farm lease agreements.

This court has previously defined improvements, generally, as "'everything that enhances the value of premises permanently for general uses.'"[14] This includes "'not only buildings and fixtures, but also many other things which are not buildings or fixtures.'"[15] An improvement has also been defined as a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor and money and is designed to make the property more useful or valuable as distinguished from ordinary repairs."[16] A CIA, in the sense that its attachment to a piece of property increases the value of said property, may fall within this broad definition.

However, it appears that the term "improvement," within the context of a lease, has never traditionally included intangible property like CIAs. The few courts to have addressed the issue have limited the definition of improvement to tangible property only.[17] Furthermore, this court's own list of "'the most common illustrations of improvements'" all involved the addition of tangible property to the real estate.[18] The plain and ordinary definition of the term "improvement" does not include CIAs.

---

[13] *Mellon Bank, N.A. v. Aetna Business Credit*, 619 F.2d 1001, 1013 (3d Cir. 1980). See, also, 11 Samuel Williston, A Treatise on the Law of Contracts § 32:4 (Richard A. Lord ed., 4th ed. 2012).

[14] See *Watson Bros. Realty Co. v. County of Douglas*, 149 Neb. 799, 802, 32 N.W.2d 763, 764 (1948).

[15] *Id.*

[16] 41 Am. Jur. 2d *Improvements* § 1 at 336 (2005).

[17] See, *Kentucky Tax Commission v. Jefferson Motel, Inc.*, 387 S.W.2d 293 (Ky. 1965); *Cadle Co. v. Butler*, 951 S.W.2d 901 (Tex. App. 1997).

[18] See *Watson Bros. Realty Co., supra* note 14, 149 Neb. at 802, 32 N.W.2d at 764.

Although Kalkowski did the work that resulted in TPNRD's assigning the CIAs to the property, Kalkowski did not actually transfer the CIAs to the land. Under TPNRD rules, NNTM, as the owner of the real estate, is entitled to legal ownership of the additional CIAs. Kalkowski is arguably entitled to the tangible property (i.e., irrigation equipment) that he installed which led to the creation of the additional CIAs, but the CIAs themselves are a different matter. The CIAs are intangible property legally owned by NNTM, and the lease agreement does not permit Kalkowski to remove the CIAs. The argument that Kalkowski is entitled to the CIAs under the terms of the lease agreement is without merit.

*Recovery Under Unjust*
*Enrichment Theory.*

[8,9] Kalkowski argues, in the alternative, that NNTM was unjustly enriched by Kalkowski's work on the property. There is no doubt that NNTM was enriched by Kalkowski's work on the property, but we must determine whether NNTM was enriched *unjustly*. "The fact that a recipient has obtained a benefit without paying for it does not of itself establish that the recipient has been unjustly enriched."[19] It is a "bedrock principle of restitution" that unjust enrichment occurs when there has been a "'transfer of a benefit without adequate legal ground.'"[20]

[10] Unjust enrichment is a malleable concept and available in a variety of situations. However, the Restatement (Third) of Restitution and Unjust Enrichment[21] makes it clear that restitution is not available "for an unrequested benefit voluntarily conferred, unless the circumstances of the transaction justify the claimant's intervention in the absence of [a] contract." For example, restitution is not available on an

---

[19] 1 Restatement (Third) of Restitution and Unjust Enrichment § 2(1) at 15 (2011).

[20] *City of Scottsbluff, supra* note 7, 282 Neb. at 866, 809 N.W.2d at 743 (quoting 1 Restatement, *supra* note 19, § 1, comment *b*.).

[21] 1 Restatement, *supra* note 19, § 2(3) at 15. See, also, *Indiana Lumbermens Mut Ins v. Reinsurance Results*, 513 F.3d 652 (7th Cir. 2008).

assumpsit claim when the payments were voluntarily made to the recipient.[22]

[11,12] Similarly, restitution is unavailable if it would "subject an innocent recipient to a forced exchange."[23] The idea of avoiding a "forced exchange" through restitution stems from the concept that the parties should usually be free to enter—or not enter—into contracts according to their own free will.[24] Therefore, subject to various exceptions,[25] restitution will not be available "if the effect of payment would be to complete an exchange that—had it been proposed as a contract—the recipient would have been free to reject."[26]

Kalkowski had no reasonable grounds to expect compensation from NNTM in the form of the CIAs or their fair market value for the upgrades made to the property. NNTM in no way indicated that it wished for Kalkowski to undertake the work. Although in hindsight Kalkowski's work appears reasonable and a good investment, he was not actually compelled to carry out the work in a way that made his actions involuntary. In addition, NNTM should have been free to decide whether it wished to enter into an agreement where NNTM compensated Kalkowski in some way in exchange for Kalkowski's performing work on the land which was aimed at increasing the number of CIAs assigned to the parcel. Had Kalkowski made the offer before he undertook his work, NNTM certainly would have been free to refuse. An award of restitution in this case would result in a classic forced exchange. Because the benefits were voluntarily conferred by Kalkowski and NNTM would have been free to reject Kalkowski's offer had it been made, NNTM was not unjustly enriched.

Kalkowski's assignment of error is without merit.

---

[22] See, e.g., *City of Scottsbluff, supra* note 7; *Malec v. ASCAP*, 146 Neb. 358, 19 N.W.2d 540 (1945).

[23] 1 Restatement, *supra* note 19, § 2(4) at 16.

[24] See Michael Traynor, *The Restatement (Third) of Restitution & Unjust Enrichment: Some Introductory Suggestions*, 68 Wash. & Lee L. Rev. 899, 900 (2011).

[25] See 1 Restatement, *supra* note 19, §§ 26 to 30.

[26] *Id.*, § 30, comment *b*. at 465.

*Recusal.*

[13] Kalkowski assigns that the trial judge erred in failing to recuse himself from the proceedings after the judge had a discussion with the general manager of another natural resources district concerning Kalkowski. A trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown.[27]

[14] A party may not rely on his or her own conduct as a way to force a judge to recuse himself or herself from the proceedings. For instance, in *State v. Ellefson*,[28] a criminal defendant, after his conviction, professed his innocence in several letters to the judge who presided over the defendant's trial. We held that the judge was not required to recuse himself from hearing the defendant's motion for postconviction relief.[29] To hold otherwise would mean that "all any party in a legal proceeding would have to do in order to disqualify a judge would be to write a series of nasty letters, and then claim 'foul.'"[30]

In this case, the only reason the judge had any contact with the general manager of the natural resources district was due to Kalkowski's own actions. Kalkowski could have avoided the entire situation by simply refraining from contacting the other natural resources district concerning the judge's property. The fact that the judge owns and leases irrigated farmland in another natural resources district would not lead a reasonable person to question the judge's impartiality. There is no evidence in the record before us to indicate that the natural resources district where the judge's land is located even regulates its water supply in the same way TPNRD does. The district court did not abuse its discretion in denying Kalkowski's

---

[27] *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013).

[28] *State v. Ellefson*, 231 Neb. 120, 435 N.W.2d 653 (1989).

[29] *Id.*

[30] *Id.* at 127, 435 N.W.2d at 658.

motion for recusal. Kalkowski's assignment of error is without merit.

## CONCLUSION

Accordingly, we find that the district court did not err in determining Kalkowski was not entitled to the CIAs and in denying Kalkowski's motion for recusal.

AFFIRMED.

_____

BRIAN MARCUZZO AND DONNA MARCUZZO, APPELLANTS,
v. BANK OF THE WEST ET AL., APPELLEES.
___ N.W.2d ___

Filed May 1, 2015.    No. S-14-367.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Courts: Dismissal and Nonsuit: Appeal and Error.** The exercise of the power to dismiss a matter for lack of prosecution rests in the sound discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of a showing of an abuse of discretion.

3. **Appeal and Error.** Appellants are required to point out the factual and legal bases that support their assignments of error.

4. ____. An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.

5. ____. An appellate court will not address arguments that are too generalized or vague to be understood.

6. **Actions: Parties: Standing: Jurisdiction.** Before a party is entitled to invoke a court's jurisdiction, that party must have standing to sue, which involves having some real interest in the cause of action.

7. **Actions: Parties: Standing.** To have standing to sue, a plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.

8. ____: ____: ____. The purpose of an inquiry as to standing is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted.

9. **Declaratory Judgments.** Where declaratory relief is sought, an actual controversy must be present.

10. **Standing: Claims: Parties.** Standing requires that a plaintiff show his or her claim is premised on his or her own legal rights as opposed to rights of a third party.